UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-24889-GRAHAM/McALILEY

**GUSTAVO ABELLA,**
   **Plaintiff,**

 v.

**TOWN OF MIAMI LAKES, et al.,**
   **Defendants.**
_____/

## MIAMI-DADE COUNTY'S MOTION TO DISMISS THE COMPLAINT AND OFFICER JUAN RODRIGUEZ'S PARTIAL MOTION TO DISMISS THE COMPLAINT

Defendant Miami-Dade County, through the undersigned, hereby moves to dismiss any and all claims asserted against it in *pro se* Plaintiff Gustavo Abella's Complaint [ECF No. 1] under Federal Rule of Civil Procedure 12(b)(6).

Defendant Officer Juan Rodriguez, also through the undersigned, moves to dismiss the Complaint in part under Rule 12(b)(6).

### INTRODUCTION

In his Complaint, Abella alleges that Officer Juan Rodriguez, of the Miami-Dade Police Department (MDPD), retaliated against him for exercising his First Amendment rights on various occasions between 2016 and 2018. Accepting Abella's well-pleaded factual allegations as true, Officer Rodriguez does not contest that Abella has stated a claim for retaliation based on an encounter dated May 17, 2016, when Officer Rodriguez allegedly threatened to issue him a ticket if he did not remove a political sign from his car. Compl. ¶¶ 27-30; *see also Abella v. Simon*, 831 F. Supp. 2d 1316, 1336-37 (S.D. Fla. 2011) (holding that substantively identical allegations survived a motion to dismiss), *vacated on other grounds*, 482 F. App'x 522 (11th Cir. 2012).

Aside from that one discrete incident, the Complaint fails to state a claim against Officer

1

Rodriguez. The overwhelming majority of the allegations are legal conclusions that this Court should disregard. When those conclusory allegations are stripped away, what remains are vague assertions that Officer Rodriguez "followed" Abella or "waited for" him on a few sporadic occasions over a span of two-and-a-half years. He does not plausibly allege that Officer Rodriguez retaliated against him for exercising his First Amendment rights. Alternatively, Officer Rodriguez is entitled to qualified immunity because Abella does not allege that his conduct violated a clearly established right. Thus, to the extent Abella's retaliation claim is based on anything but that single May 2016 encounter, it should be dismissed.

Miami-Dade County, though named as a Defendant, is not named in any count. That notwithstanding, the sparse allegations mentioning the County do not permit Abella to hold it liable for any civil rights violation. Any claim asserted against it should be likewise be dismissed.

## BACKGROUND

Plaintiff Gustavo Abella is a resident of Miami Lakes, Florida. Defendant Officer Juan Rodriguez, of the MDPD, was assigned to the Town of Miami Lakes. Compl. ¶ 11. Abella alleges that on several occasions in 2016, 2017, and 2018, he filed grievances via email to the Town of Miami Lakes and/or the Miami-Dade Police Department complaining about Officer Rodriguez and what Abella perceived to be his harassing conduct.[1] *Id.* ¶¶ 21 (April 12, 2016), 24 (April 27, 2016), 42 ("[t]hru out 2017" [sic]), 46 (January 17, 2018), 47 ("[t]hroughout 2018"). According to the Complaint, Abella encountered Officer Rodriguez on seven occasions between April and December 2016:

> **Encounter 1 (April 28, 2016):** Officer Rodriguez approached Abella, looked at him, and said "MONEY." *Id.* ¶ 25.
>
> **Encounter 2 (June 8, 2016):** Officer Rodriguez "followed stalked and intimidated" Abella. *Id.* ¶ 31.
>
> **Encounter 3 (June 26, 2016):** Officer Rodriguez "wait[ed] for [Abella] to exit his home."

---

[1] The County and Officer Rodriguez recount only the allegations that pertain to them.

> *Id.* ¶ 32.
>
> **Encounter 4 (September 13, 2016):** Officer Rodriguez "appeared outside" Abella's residence and "followed, harassed, stalked and intimidated" him "all the way to [his] bank." *Id.* ¶ 33.
>
> **Encounter 5 (September 15, 2016):** Officer Rodriguez "followed intimidated and harassed" Abella through Miami Lakes and onto the Palmetto Expressway. *Id.* ¶ 34.
>
> **Encounter 6 (sometime between September and October 2016):** Abella left his house with magnets on his car supporting the campaign of a candidate for Miami Lakes Town Council, and Officer Rodriguez "follow[ed]," "harass[ed]," "intimidate[d]," and "ma[d]e hand gestures at" him. *Id.* ¶ 37.
>
> **Encounter 7 (December 6, 2016):** Officer Rodriguez "followed," "harassed," and "shouted" at Abella. *Id.* ¶ 41.

and on six occasions between January and October 2018 (he alleges no facts about any specific encounter that took place in 2017):

> **Encounter 8 (January 10, 2018):** Officer Rodriguez "followed and harassed" Abella and "ma[de] hand gestures." *Id.* ¶ 43.
>
> **Encounter 9 (January 11, 2018):** Officer Rodriguez "followed," "stalked," and "harassed" Abella. *Id.* ¶ 44.
>
> **Encounter 10 (February 6, 2018):** Officer Rodriguez "appeared" outside Abella's residence and followed him to the bank. *Id.* ¶ 48.
>
> **Encounter 11 (March 1, 2018):** Officer Rodriguez followed Abella until he pulled into his home. *Id.* ¶ 49.
>
> **Encounter 12 (March 7, 2018):** Officer Rodriguez "followed and then drove parallel to [Abella's] car on the driver's side intimidating and harassing" his daughter "with disrespectable hand gestures" as she drove the car. *Id.* ¶ 50.
>
> **Encounter 13 (October 4, 2018):** Officer Rodriguez "appeared" and "harass[ed]," "threaten[ed]," and "intimidate[d]" Abella. *Id.* ¶ 51.

Separate from these encounters, Abella alleges that, in 2016, Alex Rey, the Manager of the Town of Miami Lakes (and a Defendant in this action), sought an injunction in state court against Abella and that Officer Rodriguez testified as a witness. *Id.* ¶ 26. Abella claims that Officer Rodriguez testified falsely in that proceeding in retaliation for his filing complaints about Officer Rodriguez's alleged conduct. *Id.*

\* \* \*

Abella filed this Complaint on November 21, 2018. He alleges a single count against Of-

3

ficer Rodriguez, Count II, claiming that the officer violated 42 U.S.C. § 1983 by retaliating against him for exercising his First Amendment right of petitioning for redress of grievances through the complaints he filed with the Town of Miami Lakes and the MDPD. Abella ostensibly does not assert a claim against the County, but the way the County reads the Complaint, it anticipates that the Court could infer that he asserts a § 1983 municipal liability claim.

## LEGAL STANDARD

To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face," meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept well-pleaded factual allegations as true and view those allegations in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive that deference. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). And though courts hold *pro se* pleadings, like this plaintiff's, to a less stringent standard than pleadings drafted by attorneys and construe them liberally, *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011), that liberal construction does not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (citation omitted).

## ARGUMENT

Abella's claims against both the County and Officer Rodriguez should be dismissed. As to the County, Abella cannot state a municipal liability claim because he neglects to identify any official policy or unofficial custom or practice that caused a violation of his First Amendment rights. MDPD's decision not to act on the grievances he filed does not amount to a wide-

spread pattern of committing or condoning constitutional violations.

His First Amendment claim against Officer Rodriguez in his individual capacity suffers from several fatal infirmities. First, the Court should strip away the multitude of conclusory allegations and legal conclusions that permeate the Complaint. Second, Abella fails to plausibly state that his encounters with Officer Rodriguez can be considered First Amendment retaliation. Even if he has alleged that he engaged in protected speech, he cannot satisfy the requirement that Officer Rodriguez's unremarkable conduct would deter the speech of a person of ordinary firmness, nor can he show a causal connection between his own speech and Officer Rodriguez's conduct. Finally, Officer Rodriguez is entitled to absolute immunity from civil liability for testifying as a witness in Alex Rey's injunction proceeding, and he is otherwise entitled to qualified immunity because Abella does not allege that his conduct violated any clearly established right.

## I. The Complaint Fails to State a Claim Against the County for Municipal Liability Under § 1983.

### A. *The official-capacity claim against Officer Rodriguez should be construed as a claim against the County.*

Abella names Officer Rodriguez as a defendant both in his individual and official capacities. But in the sole count alleged against Officer Rodriguez, Count II, the Complaint states that it is asserted "Against Defendant OFFICER JUAN F. RODRIGUEZ, *Individually* for violations of the First Amendment," not against him in his official capacity. Compl. at 9 (emphasis added).

To the extent Abella asserts any claims against Officer Rodriguez in his official capacity, those claims should be construed as municipal liability claims asserted against the entity that employs Officer Rodriguez—Miami-Dade County. A § 1983 plaintiff who sues a municipal officer or employee in his official capacity is, in reality, suing the municipality for whom that officer or employee is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1986) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in

all respects other than name, to be treated as a suit against the entity.").

> **B.** *The Complaint does not identify any official policy or unofficial custom or practice of the County that caused a violation of constitutional rights.*

A municipality cannot be held vicariously liable under § 1983 for the actions of its employees when its agents or employees cause a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, it can be held liable only if it caused an injury "in the implementation of official municipal policy." *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1951 (2018) (cleaned up);[2] *see also Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010) (explaining that liability attaches "only for [a municipality's] own violations of federal law"). A plaintiff attempting to establish that a local governmental entity "***itself*** caused the constitutional violation at issue," *Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007), has two options: identify an officially promulgated municipal policy, or identify an unofficial custom or practice shown through the repeated acts of a final policymaker for the municipality, *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). He also must demonstrate that the identified policy or custom ***caused*** the alleged deprivation of a constitutional right. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

The Complaint does not satisfy any of these requirements. Abella alleges merely that he never received responses to the complaints and grievances he sent to the MDPD. Compl. ¶¶ 17-19, 42, 46-47. He identifies no officially promulgated County policy that caused some depriva-

---

[2] This brief uses the parenthetical (cleaned up), which, "while perhaps unfamiliar, is being used with increasing frequency to indicate that internal quotation marks, alterations, and/or citations have been omitted from a quotation." *State v. Cady*, 414 P.3d 974, 977 n.2 (Utah App. 2018); *see* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017). It has seen use by judges in published opinions, *see, e.g.*, *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 & n.6 (D.C. Cir. 2018); *Levitt v. Sw. Airlines Co.* (*In re Sw. Airlines Voucher Litig.*), 898 F.3d 740, 746 (7th Cir. 2018); *United States v. Steward*, 880 F.3d 983, 986 & n.3 (8th Cir. 2018); *United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017), and by practitioners in courts at all levels, *see, e.g.*, Brief for Petitioners 5, *Frank v. Gaos*, No. 17-961 (U.S. July 9, 2018); Brief for the United States 13 & n.5, *United States v. Quijije-Napa*, No. 18-11471 (11th Cir. Dec. 4, 2018); Motion to Dismiss Amended Complaint 8 & n.9, *Balbin v. Concepcion*, No. 18-20875 (S.D. Fla. Dec. 28, 2018).

tion of a constitutional right. Without that, he cannot state a § 1983 claim based on policy. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

He also cannot state a claim based on custom because he does not point to any prior incident of unconstitutional conduct by a County officer involving similar facts. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005). Even had he identified a prior incident at all (he doesn't), such incidents carry no weight in supporting the allegation of a custom if they did not result in a finding that a **constitutional violation** occurred. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 n.21 (11th Cir. 2015); *Whitaker v. Miami-Dade County*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015). His allegations that he filed complaints against Officer Rodriguez are immaterial, because nonmeritorious prior complaints against officers are a nonfactor in the *Monell* calculus. *See Simmons v. Bradshaw*, 879 F.3d 1157, 1168 (11th Cir. 2018); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). In *Brooks*, the Eleventh Circuit held that although the defendant police officer had been the subject of ten prior excessive force complaints, the mere fact of those complaints did not support a *Monell* claim because the plaintiff never demonstrated that the past complaints had any merit. *Brooks*, 813 F.2d at 1193. Abella similarly fails to find even one sustained complaint against Officer Rodriguez. The number of complaints Abella filed is irrelevant, for, as the *Brooks* court held, "the number of complaints bears no relation to their validity." *Id.* Abella just states that complaints exist. That's not enough. *See Doe v. Miami-Dade County*, 797 F. Supp. 2d 1296, 1310 (S.D. Fla. 2011) ("In judging the scope or existence of a pattern of constitutional violations, the Court requires more than evidence of accusations.").

Even assuming Abella suffered a constitutional violation, his singular experience does not give rise to a custom because he does not plausibly allege the existence of a ***pattern*** of similar constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). "The deprivations that constitute widespread abuse" sufficient to satisfy *Monell* "must be obvious, flagrant, rampant

7
OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TEL. (305) 375-5151

and of continued duration, rather than isolated occurrences." *Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). There is no allegation of a pattern here; Abella offers only his own interactions with Officer Rodriguez. He cannot bootstrap that isolated experience into a widespread municipal practice. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (plurality op.) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ."); *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality."). Without allegations evincing a pattern or practice of unconstitutional conduct, it is impossible for Abella to establish that the County's "**deliberate** conduct . . . was the 'moving force' behind [his] injuries." *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004) (citation omitted); *see also Vila v. Miami-Dade County*, 65 F. Supp. 3d 1371, 1378-80 & n.2 (S.D. Fla. 2014) (dismissing claims where the complaint did not "identify a single other incident, much less the numerous incidents required to show a widespread pattern"). This Court should dismiss Abella's municipal liability claim.

II. **With the Exception of the Discrete Encounter of May 17, 2016, the Complaint Fails to State a Claim for First Amendment Retaliation against Officer Rodriguez.**

   A. *Several allegations Abella ostensibly asserts to support the existence of a First Amendment violation should be disregarded as conclusory and failing to pass muster under* **Twombly** *and* **Iqbal.**

In this Circuit, a court evaluating the sufficiency of a complaint employs a two-step framework. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679). The court first identifies allegations that are no more than conclusions, which are not entitled to the assumption of truth, and disregards them. *Id.* It then assumes the veracity of the remaining factual allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.*

8

At the first step here, before the Court proceeds to any analysis of the substance of Officer Diaz's municipal liability claim, several "conclusory allegations, unwarranted deductions of fact [and] legal conclusions masquerading as facts" must be identified and disregarded. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Abella's Complaint is plagued by labels, conclusions, and formulaic recitations of the elements of a cause of action for First Amendment retaliation. Chief among them are the absurd allegations that Officer Rodriguez is "doing everything illegally possible to silence" him and "doing everything illegally possible acting under color of law." Compl. ¶¶ 15, 52. Abella's allegations that Officer Rodriguez participated in "unlawful behavior" and "violat[ing] rights" also do not pass muster. *Id.* ¶¶ 15, 20, 77. Wild accusations like these are *Twombly* and *Iqbal*'s *bête noire*; they are "precisely the type of allegation that this Court has been directed to disregard." *Fernandez v. Sch. Bd. of Miami-Dade County*, No. 15-21915, 2015 WL 9474616, at *4 (S.D. Fla. Dec. 29, 2015).

The pleading problems don't end there: nary a paragraph goes by that hasn't been marred by Abella's wholly unsupported allegations. He claims that Officer Rodriguez has engaged in "misconduct and history of widespread abuse" and "unlawful misconduct of abuse and retaliation." *Id.* ¶¶ 19, 24. But he never cites **one** time Officer Rodriguez was determined to have engaged in misconduct, abuse, retaliation, or lawbreaking, let alone a "widespread" "history" of such behavior. He alleges that he and his family "continues to be punished and retaliated against by" Officer Rodriguez for "engaging in a conduct protected by the First Amendment," *id.* ¶¶ 21, 78 (all errors [sic]), alleges that Officer Rodriguez "continued to retaliate[] against [him] and his family for [his] filing grievances against him and engaging in conduct's protected by the First Amendment, and complains of "misconduct and injustice that Officer [Rodriguez] continued," *id.* ¶ 42 (all errors [sic]). But he doesn't shore up these labels and conclusions with any facts. And he claims that Officer Rodriguez "put[] pressure" on him "not to come forward with evidence,"

that Officer Rodriguez "orchestrated a situation" against him, and that he "orchestrated" a "malicious and corrupt act" against him. *Id.* ¶ 24. What kind of "pressure"? What "evidence"? What "situation" or "malicious and corrupt act" did Officer Rodriguez "orchestrate"? The Complaint has no answers. Finally, Abella fires an egregious buckshot of labels at Officer Rodriguez, flatly alleging that he

> engaged in "unlawful misconduct of harassing stalking intimidating threatening" him;
>
> "followed stalked and intimidated" him;
>
> "followed, harassed, stalked and intimidated" him;
>
> "follow[ed] harass[ed] and intimidate[d]" him and "ma[d]e hand gestures at" him;
>
> "followed harassed and shouted at" him;
>
> "followed and harassed" him;
>
> "followed stalked harassed" him;
>
> "continu[ed] to harass threaten intim[id]ate and violate" his civil rights;
>
> "continued to harass intimidate stalk follow threaten" him;
>
> "intimidat[ed] and harass[ed]" him;
>
> "continue[d] to harass threaten intimidate" him;
>
> "continued repeatedly harass[ing] and intimidat[ing] [him] in retaliation for [his] conviction in the expression of his political opinions, and filing grievances against" Officer Rodriguez;
>
> "repeatedly harassed" him;
>
> engaged in "repeated unlawful retaliatory acts of harassment and intimidation";
>
> engaged in "unlawful retaliatory actions"; and
>
> "repeated[ly] violat[ed]" his civil rights."

*Id.* ¶¶ 17, 31, 33, 37, 41, 43-44, 46-47, 50, 51, 64-66, 70, 76 (all errors [sic]).

These "naked assertions devoid of further factual enhancement" do not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). It's hard to imagine a complaint getting closer to the "unadorned, the-defendant-unlawfully-harmed-me" style of pleading rejected by *Twombly* and *Iqbal* than Abella's does by alleging without support that a defendant did "everything illegally possible to silence him" (whatever that means), "orchestrated a situation" (whatever ***that*** means), engaged in "un-

lawful behavior," or "violated his civil rights"—or by cobbling together nearly two dozen allegations from a grab bag of labels like "stalked," "harassed," "threatened," "intimidated," and "retaliated." In no way can Officer Rodriguez be fairly "apprised of the conduct that forms the basis of the charges against" him were Abella's Complaint permitted to go forward based on vagaries and legal conclusions like these. *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013). An overwhelming majority of the Complaint's allegations do not allege what **conduct** Officer Rodriguez actually engaged in. They instead state nothing more than that the officer engaged in "retaliation," etc., "without providing the facts from which one could draw such a conclusion." *Id.* at 1251. This Court should strip away these bare legal conclusions, revealing the blatant insufficiency of the allegations that lies beneath.

> **B.     *Officer Rodriguez is absolutely immune from any First Amendment retaliation claim arising from his testimony as a witness in Alex Rey's petition for an injunction against Abella.***

Abella's allegation that Officer Rodriguez testified falsely as a witness in Alex Rey's injunction proceeding in retaliation for Abella's complaints cannot give rise to a First Amendment claim. Officer Rodriguez is absolutely immune from civil claims arising from testimony he provided as a witness in that action.

Section 1983 does not permit recovery of damages against a police officer for testimony in a judicial proceeding. *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1467 & n.16 (3d Cir. 1992). "As with any witness testifying under oath, the penalty for false testimony is potential prosecution for perjury," not a civil suit for money damages under § 1983. *Scarbrough v. Myles*, 245 F.3d 1299, 1305 (11th Cir. 2001). In *Scarbrough*, the Eleventh Circuit emphasized the importance of allowing police officers to enjoy the same absolute immunity for testimony as do lay witnesses, in order to prevent an officer's "energy and attention from being diverted away from law enforcement responsibilities every time a disgruntled defendant

accuses him of perjury." *Garrett v. Stanton*, No. 08-0175, 2010 WL 320492, at *3 n.3 (S.D. Ala. Jan. 18, 2010) (citing *Scarbrough*, 245 F.3d at 1305 & n.12). Officer Rodriguez is owed that immunity here. Accordingly, to the extent Abella asserts any retaliation claim from this allegation, it should be dismissed.

### C. *Officer Rodriguez is entitled to qualified immunity from Abella's First Amendment retaliation claims arising from any remaining allegations.*

The doctrine of qualified immunity shields a public official acting within his discretionary authority from civil liability unless he has violated a federal statutory or constitutional right and the unlawfulness of his conduct was clearly established at the time. *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015). Qualified immunity is nominally an affirmative defense, but once the defense is properly raised, the plaintiff has the burden immediately to negate it, *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003), for the defense is "an immunity from suit" that is "effectively lost if a case is erroneously permitted to go to trial," *Simmons*, 879 F.3d at 1162 (emphasis removed) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). At bottom, "[t]he 'breathing room' afforded by qualified immunity is generous; . . . 'it protects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

To initially activate the defense, a defendant must show that he was acting within the scope of his discretionary authority. *Alcocer v. Mills*, 906 F.3d 944, 950 (11th Cir. 2018). As alleged in the Complaint, Officer Rodriguez was acting within his discretionary authority as a Miami-Dade police officer at all relevant times. Compl. ¶ 11; *see also, e.g.*, *Estate of Cummings*, 906 F.3d at 940 (explaining that a defendant satisfies his burden if he shows that he was "performing a legitimate job-related function (that is, pursuing a job-related goal) through means that were within his power to utilize" (cleaned up)). Thus, the burden shifts to Abella, whose claims risk dismissal

unless he sufficiently alleges "(1) that the defendant violated one of his constitutional rights, and (2) that the right was clearly established at the time of the wrongful conduct." *J.W. ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1258 (11th Cir. 2018).

### 1. Abella does not sufficiently allege that Officer Rodriguez violated any First Amendment right.

"To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). For each alleged encounter with Officer Rodriguez, even if Abella satisfies the first element of the cause of action, he fails to satisfy one of the other two, if not both.

Abella does not show that Officer Rodriguez acted in a way that adversely affected his protected speech. "[A] defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 481 (cleaned up). Conduct that has been found to meet this standard includes issuing a BOLO to local law enforcement officers warning them to consider the plaintiff a danger to any officer and instructing them to "act accordingly," *id.* at 479; accessing confidential government databases containing information about the plaintiffs, attempting to obtain arrest warrants against the plaintiffs without probable cause, and producing and mailing flyers to local residents depicting the plaintiffs as criminals, *Bennett v. Hendrix*, 423 F.3d 1247, 1254-55 (11th Cir. 2005); stopping the plaintiff's car and detaining him for an unreasonable amount of time with guns drawn, *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002); publicly releasing confidential and humiliating details of the plaintiff's rape, *Bloch v. Ribar*, 156 F.3d 673, 680-81 (6th Cir. 1998); or even issuing parking tickets, because it invokes "the punitive machinery of govern-

ment in order to punish [a plaintiff]," *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). Though a law-enforcement officer cannot "use his position to harass and intimidate individuals in retaliation for exercising their First Amendment rights," *Bailey*, 843 F.3d at 485, "government officials should not be liable when the plaintiff . . . suffers only a *de minimis* inconvenience to her exercise of First Amendment rights," *Bennett*, 423 F.3d at 1252 (cleaned up). Because the conclusory allegations that Officer Rodriguez "stalked," "intimidated," "harassed," or "threatened" Abella in the encounters should be disregarded, all that remains are allegations that Officer Rodriguez followed or simply waited for Abella at various points for indeterminate amounts of time over two-and-a-half years; made hand gestures on some occasions; and, in one instance, said the word "MONEY." At most, these are *de minimis* inconveniences that would not deter a person of ordinary firmness from engaging in speech.

What's more, "while it is not dispositive, the plaintiff's actual response to the defendant's conduct 'provides some evidence of the tendency of that conduct to chill First Amendment activity.'" *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (cleaned up) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005), *cited with approval in Bennett*, 423 F.3d 1247); *see also McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) ("The second element requires ***some showing*** that the plaintiff's exercise of free speech has been curtailed." (emphasis added) (cleaned up)); *Giraldo v. City of Hollywood*, 142 F. Supp. 3d 1292, 1308 (S.D. Fla. 2015). Abella engaged continually in political speech, undeterred, for over two years after the first encounter with Officer Rodriguez; he advances no allegation that he ever considered stopping or slowing his speech after subsequent encounters. Considering that, it's hard for him to ingenuously argue that a person of ordinary firmness would find that random sporadic following, hand gestures, or single-word utterances by a police officer, without more, had any tendency to chill his engaging in the protected conduct of complaining about that officer. *Cf.*

*Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (holding that defendants' name-calling and scolding of plaintiff at city council meetings, while inappropriate, were not sufficient to deter a person of ordinary firmness, especially in light of the fact that the plaintiff continued to speak out against the city council on numerous occasions). Abella, in short, fails to satisfy the second element of his retaliation claim.

Abella also fails to satisfy the third, because he does not plausibly allege that a causal connection exists between Officer Rodriguez's conduct and his own speech. The speech must be a "motivating factor" behind the defendant's alleged retaliatory conduct. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). In other words, a plaintiff "must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). It goes without saying that the defendant cannot have had that motivation if he was not first "***aware*** of the protected conduct," *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1324 (S.D. Fla. 2014) (emphasis added) (quoting *Thampi v. Manatee Cty. Bd. of Comm'rs*, 384 F. App'x 983, 990 (11th Cir. 2010)), and he cannot have been aware of the protected conduct unless he had "***actual knowledge***" of it, *Wall-DeSousa v. Fla. Dep't of Hwy. Safety & Motor Vehicles*, 691 F. App'x 584, 591 (11th Cir. 2017) (emphasis added). If the defendant did not actually know of the plaintiff's protected conduct before taking an allegedly retaliatory action, he cannot be held liable for retaliation. *Farrow v. West*, 320 F.3d 1235, 1249 (11th Cir. 2003); *Burch v. City of Florence*, 913 F. Supp. 2d 1221, 1251 (N.D. Ala. 2012). Abella does not allege that Officer Rodriguez was at all aware of his grievances. He alleges that he sent emails to the Town of Miami Lakes Police Department, the Town of Miami Lakes, or the Miami Dade Police Department, but he never states that Officer Rodriguez had actual knowledge that the emails existed or had actual knowledge about their content.

Ironically, the case that best highlights Abella's failure to allege this element of the claim

is his own previous case against Officer Rodriguez from nearly a decade ago. *See Abella v. Simon*, 831 F. Supp. 2d 1316 (S.D. Fla. 2011). There, Abella asserted a similar First Amendment retaliation claim against Officer Rodriguez arising from Officer Rodriguez's issuance of a parking ticket, allegedly in response to his filing grievances. In finding that Abella had stated a causal connection, Judge Altonaga relied heavily on his allegation that "[t]he police acknowledged that they were aware of Plaintiff's complaints and indicated they were acting in response." *Id.* at 1346 (citing paragraph 50 of the operative complaint). The "police" to which Judge Altonaga referred was none other than Officer Rodriguez; the paragraph to which she cited alleged the following:

> When Officer Rodriguez was writing the citation he stated to Plaintiff that "the complaints he filed with the Commission on Ethics was not going to do anything to him," . . . and stat[ed] that all those complaints . . . will not get anything and . . . will not be able to prove anything."

Am. Compl. ¶ 50, *Abella v. Simon*, No. 11-20152 (S.D. Fla. Feb. 9, 2011), ECF No. 17, attached as **Exhibit A**.³ While in that case Officer Rodriguez was indeed alleged to have acknowledged that Abella made complaints against him, a similar allegation of Officer Rodriguez's acknowledgement is conspicuously absent here. Abella may have shown causation then, but he doesn't show it now. And even if it could be inferred that Officer Rodriguez **knew** about the grievances, an inference that he was **motivated** by them to take adverse action because of them based on nothing but Abella's say-so would be an inference "based on speculation and conjecture[, which] is not reasonable." *City of Riviera Beach v. Unnamed Gray, Two Story Vessel*, 649 F.3d 1259, 1272 (11th Cir. 2011) (cleaned up), *rev'd on other grounds sub nom. Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013).

---

³ On a motion to dismiss, courts are ordinarily limited to considering the face of the complaint and any documents attached to it. However, "a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). Along these lines, a district court "may take judicial notice of and consider documents which are public records, [and] that are attached to a motion to dismiss." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014). This exhibit is a public record—an iteration of Abella's complaint in a prior case against this Defendant—so its authenticity cannot be challenged. It is central to his claim because it shows his inability to successfully plead a retaliation claim now as he was able to then.

Abella also cannot establish the causal connection because he does not "identify a sequence of events from which a retaliatory motive can be inferred." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014) (cleaned up). Although a court may consider temporal proximity in determining whether a plaintiff has established causation, "mere temporal proximity, without more, must be 'very close'" to satisfy the burden. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), *cited in Brannon v. Finkelstein*, No. 10-61813, 2017 WL 1395171, at *6 (S.D. Fla. Feb. 1, 2017), *report and recommendation adopted*, 2017 WL 1452944 (S.D. Fla. Feb. 17, 2017) (Graham, J.). *Compare Akins v. Fulton County*, 420 F.3d 1293, 1305 (11th Cir. 2005) (finding "close temporal proximity" when defendant began retaliating against plaintiffs the day of their protected conduct), *and Bailey*, 843 F.3d at 479 (finding that the plaintiff had established causation where he asserted that the defendants began retaliating against plaintiff's the same night he made complaints about racial profiling and other unconstitutional behavior by police officers and sheriff's deputies), *with Smith v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 944, 952-53 (11th Cir. 2017) (affirming district court's finding of no causal connection where plaintiff's only causation evidence was a three-week temporal proximity between his protected conduct and defendant's adverse action), *and Ramzy v. Columbus Consol. Gov't*, No. 15-0002, 2017 WL 440262, at *10 (M.D. Ga. Feb. 1, 2017) (characterizing a causal connection based solely on temporal proximity of two months between protected speech and adverse action as "weak").

The temporal proximity between Abella's protected conduct and many of the encounters with Officer Rodriguez ranges from weeks to months. Abella alleges the dates he engaged in protected conduct only three times: he emailed grievances on April 27, 2016, and January 17, 2018; and he placed a sign on his car on May 17, 2016. He put political magnets on his car at some point during a time ranging from September 2016 through, presumably, the 2016 election. And

while he claims he emailed complaints "throughout" 2017 and 2018, he does not state when. Encounters 2, 3, 4, and 5 took place three weeks (June 8, 2016), five weeks (June 26), and nearly four months (September 13 and 15) after he posted the sign on his car. Encounter 7 took place at least two months (December 6) after he placed the political magnets on his car. And encounters 10, 11, 12, and 13 took place three weeks (February 6, 2018), six or seven weeks (March 1 and 7), and almost nine months (October 4) after he sent his last dated email. Such prolonged lapses of time are too attenuated, without more, to support causation.

Because of his failure to satisfy one or more critical elements of the cause of action, Abella cannot show that these encounters—considered separately or together—support a claim that Officer Rodriguez violated his First Amendment rights. Accordingly, Officer Rodriguez is entitled to qualified immunity.

> 2. Abella does not allege that Officer Rodriguez's conduct violated any clearly established right.

Assuming Abella *did* adequately allege that Officer Rodriguez's conduct violated a constitutionally protected right, he fails to allege that that right was clearly established at the time of his conduct. *J.W. ex rel. Williams*, 904 F.3d at 1258. For a right to be clearly established, it

> must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (cleaned up). A plaintiff seeking to abrogate an officer's right to qualified immunity must show that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (cleaned up). If then-existing precedent does not "place the constitutionality of the officer's conduct," in the situation he confronted, "'beyond

debate,'" qualified immunity must be granted. *Wesby*, 138 S. Ct. at 589 (quoting *al-Kidd*, 563 U.S. at 741); *see also Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001) (en banc) (stating that an officer is entitled to qualified immunity unless "the pre-existing law dictates, that is ***truly compels***, the conclusion for all reasonable similarly situated public officials that what a defendant was doing violated a plaintiff's federal rights in the circumstances" (emphasis added) (cleaned up)), *abrogated on other grounds by Twombly*, 550 U.S. 544. "It is the plaintiff's burden to find" the relevant precedent. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

Whatever clearly established right the plaintiff purports to apply "must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). Consistent with this instruction, the Eleventh Circuit not ten days ago recognized that a "general right to be free from retaliation for one's speech" is too broadly defined to be clearly established. *Echols v. Lawton*, — F.3d —, 2019 WL 324550, at *3 (11th Cir. Jan. 25, 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 665 (2012)). Yet here, the Complaint merely asserts, in various forms, that Officer Rodriguez's conduct "violated [his] First Amendment rights and/or retaliated against [him] as a result of [his] exercising his First Amendment rights." Compl. ¶ 1. Allegations like these fall well wide of the mark. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (reiterating that clearly established law should not be defined "at a high level of generality" (quoting *al-Kidd*, 563 U.S. at 742)). By not alleging what settled law compels the conclusion that, in the circumstances he faced, Officer Rodriguez's conduct violated some specifically defined, clearly established constitutional right, Abella cannot overcome his entitlement to qualified immunity.

## CONCLUSION

The claim in Count II against Officer Rodriguez in his ***official*** capacity, and any other allegation that could be construed as asserting a municipal liability claim against Miami-Dade County, should be dismissed. Additionally, the claim in Count II against Officer Rodriguez in

his *individual* capacity, to the extent it arises from any allegation other than those involving the encounter of May 17, 2016, should be dismissed.

Dated: February 4, 2019.

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128

By:   /s/ Zach Vosseler
      Zach Vosseler
      Assistant County Attorney
      Florida Bar No. 1008856
      (305) 375-5151
      zach@miamidade.gov

*Counsel for Defendants Miami-Dade County and Officer Juan F. Rodriguez*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this day, February 4, 2019, on all counsel or parties of record in the manner indicated on the Service List below.

  /s/ Zach Vosseler
Zach Vosseler
Assistant County Attorney

## SERVICE LIST

*Abella v. Town of Miami Lakes*
**No. 18-cv-24889-GRAHAM/McALILEY**

Gustavo Abella
7400 Miami Lakes Drive, Apt. D108
Miami Lakes, Florida 33014
(305) 305-6622
gusabella4@gmail.com

*Plaintiff, pro se*

**Service via CM/ECF, per Consent by Pro Se Litigant (Non-Prisoner) to Receive Notices of Electronic Filing [ECF No. 8]**