UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-24889-GRAHAM/McALILEY

**GUSTAVO ABELLA,**
    **Plaintiff,**

  v.

**TOWN OF MIAMI LAKES, et al.,**
    **Defendants.**
_____/

## OFFICER JUAN RODRIGUEZ'S PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Officer Juan Rodriguez, of the Miami-Dade Police Department (MDPD), moves to dismiss in part Count II of *pro se* Plaintiff Gustavo Abella's Amended Complaint [ECF No. 26] with prejudice under Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Abella previously filed a Complaint under 42 U.S.C. § 1983 [ECF No. 1] alleging that Officer Rodriguez retaliated against him for exercising his First Amendment rights on various occasions between 2016 and 2018. Officer Rodriguez did not contest that, accepting Abella's allegations as true, he had plausibly stated a claim for retaliation based on an encounter dated May 17, 2016, in which Officer Rodriguez allegedly threatened to ticket Abella if he did not remove a political sign from his car. Compl. ¶¶ 27-30; *see Abella v. Simon*, 831 F. Supp. 2d 1316, 1336-37 (S.D. Fla. 2011) (holding that substantively identical allegations survived a motion to dismiss), *vacated on other grounds*, 482 F. App'x 522 (11th Cir. 2012). Officer Rodriguez moved to dismiss the Complaint to the extent a claim arose from any other allegation [ECF No. 14], arguing that (1) the Complaint's numerous conclusory allegations should be disregarded; (2) he is absolutely immune from a retaliation claim arising from any testimony he gave in a judicial proceeding;

1

and (3) he is otherwise entitled to qualified immunity because Abella did not allege that Officer Rodriguez violated any First Amendment right or that his conduct violated clearly established law. In lieu of responding to the motion, Abella amended his complaint, as is his right.

This new complaint is equally deficient under Rule 8. It both includes new pleading errors and fails to correct practically every pleading error identified in Officer Rodriguez's first motion. This Court should dismiss Count II with prejudice.[1]

## BACKGROUND

Plaintiff Gustavo Abella is a resident of Miami Lakes, Florida. Am. Compl. ¶ 5. Defendant Juan Rodriguez is an MDPD officer who during the relevant time was assigned to the Town of Miami Lakes by the MDPD. *Id.* ¶ 9. Abella alleges that on several occasions in 2016, 2017, and 2018, he sent emails to the MDPD complaining about Officer Rodriguez and what Abella perceived to be his harassing conduct.[2] *Id.* ¶¶ 15 (March 22, 2016), 16 (April 12, 2016), 21 (April 27, 2016), 38 ("[t]hroughout 2017"), 42 (January 17, 2018), 43 ("[t]hroughout 2018").[3] According to the Amended Complaint, Abella encountered Officer Rodriguez on seven occasions between April and December 2016:

> **Encounter 1 (April 28, 2016):** Officer Rodriguez approached Abella, looked at him, and said "MONEY." *Id.* ¶ 22.
>
> **Encounter 2 (June 8, 2016):** Officer Rodriguez "followed and stalked and intimidated" Abella. *Id.* ¶ 28.
>
> **Encounter 3 (June 26, 2016):** Officer Rodriguez "was waiting for [Abella] to exit his home." *Id.* ¶ 29.
>
> **Encounter 4 (September 13, 2016):** Officer Rodriguez "appeared outside" Abella's residence and "followed, harassed, stalked, and intimidated" him "all the way to [his] bank." *Id.* ¶ 30.
>
> **Encounter 5 (September 15, 2016):** Officer Rodriguez "followed, intimidated and harassed" Abella "through Miami Lakes and onto the Palmetto Expressway." *Id.* ¶ 31.

---

[1] Officer Rodriguez again does not seek to dismiss the claim arising from allegations regarding the May 2016 incident. *See* Am. Compl. ¶¶ 24-27.
[2] Officer Rodriguez recounts only the pertinent allegations.
[3] He also alleges that his wife sent an email on one occasion—February 12, 2016. Am. Compl. ¶ 14.

**Encounter 6 (sometime between September and October 2016):** Abella left his house with magnets on his car supporting the campaign of a candidate for Miami Lakes Town Council, and Officer Rodriguez "followed, harassed and intimidated" him and "ma[de] hand gestures at" him. *Id.* ¶ 33.

**Encounter 7 (December 6, 2016):** Officer Rodriguez "followed, harassed and shouted" at Abella. *Id.* ¶ 37.

Abella then encountered Officer Rodriguez on six occasions between January and October 2018:[4]

**Encounter 8 (January 10, 2018):** Officer Rodriguez "appeared and followed and harassed" Abella "making hand gestures." *Id.* ¶ 39.

**Encounter 9 (January 11, 2018):** Officer Rodriguez "followed, stalked and harassed" Abella. *Id.* ¶ 40.

**Encounter 10 (February 6, 2018):** Officer Rodriguez "appeared" outside Abella's residence and followed him to his bank. *Id.* ¶ 44.

**Encounter 11 (March 1, 2018):** Officer Rodriguez followed Abella until he pulled into his home. *Id.* ¶ 45.

**Encounter 12 (March 7, 2018):** Officer Rodriguez "followed and then drove parallel to [Abella's] car on the driver's side intimidating and harassing" his daughter "with disrespectable hand gesture[s]" as she drove the car. *Id.* ¶ 46.

**Encounter 13 (October 4, 2018):** Officer Rodriguez "appeared" and "harass[ed]," "threaten[ed]," and "intimidate[d]" Abella. *Id.* ¶ 47.

Separate from these encounters, in 2016, Alex Rey, the Manager of the Town of Miami Lakes (and a Defendant in this action), sought an injunction in state court against Abella. Abella claims that Officer Rodriguez testified falsely in that proceeding as a witness on Rey's behalf in retaliation for Abella's complaints about him. *Id.* ¶¶ 23, 101. He now accuses Officer Rodriguez of "conspiring" with Rey to "stalk, harass and intimidate" him. *Id.* ¶¶ 71, 83, 89. Finally, he vaguely asserts that Officer Rodriguez, Rey, and Miami Lakes Mayor Michael Pizzi (also a Defendant here) "orchestrated a situation" against him and "orchestrated a malicious and corrupt act" against him that resulted in a judgment of $100,000 being entered against him in state court. *Id.* ¶ 21.

---

[4] Abella states that "[t]hroughout 2017" Officer Rodriguez "continued to retaliate against [him] and his family," Am. Compl. ¶ 38, but he alleges no facts about any specific interaction with Officer Rodriguez that year.

## LEGAL STANDARD

To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face," meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept well-pleaded factual allegations as true and view those allegations in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive that deference. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1364 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018). And while courts hold *pro se* pleadings, like this plaintiff's, to a less stringent standard than pleadings drafted by attorneys and construe them liberally, *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011), that liberal construction does not give a court "license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (cleaned up).[5]

A plaintiff cannot deflect an attack on conclusory allegations with a promise to "flesh them out" after discovery. *See Iqbal*, 556 U.S. at 678-79. Indeed, "subjecting a defendant to the full 'panoply of expensive and time-consuming pretrial discovery devices' and forcing him to defend an action based on a plaintiff's inadequate allegations . . . runs counter to the general rules of pleading." *Franklin v. Curry*, 738 F.3d 1246, 1252 (11th Cir. 2013) (cleaned up) (quoting *Nero Trading, LLC v. U.S. Dep't of Treasury*, 570 F.3d 1244, 1249 (11th Cir. 2009)).

---

[5] This brief uses the parenthetical (cleaned up), which, "while perhaps unfamiliar, is being used with increasing frequency to indicate that internal quotation marks, alterations, and/or citations have been omitted from a quotation." *State v. Cady*, 414 P.3d 974, 977 n.2 (Utah App. 2018); *see* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017). It has seen use by judges in published opinions, *see, e.g., June Med. Servs., L.L.C. v. Gee*, 913 F.3d 573, 584 n.14 (5th Cir. 2019) (Dennis, J., dissenting from denial of rehearing en banc); *Am. Freedom Def. Initiative v. Wash. Metro. Area Transit Auth.*, 901 F.3d 356, 362 & n.6 (D.C. Cir. 2018); *Levitt v. Sw. Airlines Co. (In re Sw. Airlines Voucher Litig.)*, 898 F.3d 740, 746 (7th Cir. 2018); *United States v. Steward*, 880 F.3d 983, 986 & n.3 (8th Cir. 2018), and by practitioners in courts at all levels, *see, e.g.*, Brief for Petitioners 5, *Frank v. Gaos*, No. 17-961 (U.S. July 9, 2018); Brief for the United States 13 & n.5, *United States v. Quijije-Napa*, No. 18-11471 (11th Cir. Dec. 4, 2018); Motion to Dismiss 8 & n.9, *Balbin v. Concepcion*, No. 18-20875 (S.D. Fla. Dec. 28, 2018).

# ARGUMENT

## With the Exception of the Discrete Encounter of May 17, 2016, the Amended Complaint Fails to State a Claim for Retaliation against Officer Rodriguez

Abella's retaliation claim suffers from the same infirmities it did in the first iteration of his complaint. For starters, the Court should strip away the multitude of conclusory allegations and legal conclusions that continue to permeate the Amended Complaint. With those allegations disregarded, Abella cannot plausibly state that his encounters with Officer Rodriguez amount to First Amendment retaliation. He cannot demonstrate that Officer Rodriguez's unremarkable conduct would deter the speech of a person of ordinary firmness, nor can he show a causal connection between his own speech and Officer Rodriguez's conduct. Officer Rodriguez additionally is entitled to absolute immunity from civil liability for testifying as a witness in Alex Rey's injunction proceeding, and he is otherwise entitled to qualified immunity because Abella does not allege that his conduct violated any clearly established right.

### A.     *The conclusory allegations that remain in the Amended Complaint should be disregarded.*

In this Circuit, a court evaluating the sufficiency of a complaint employs a two-step framework. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Iqbal*, 556 U.S. at 679). The court first identifies allegations that are no more than conclusions, which are not entitled to the assumption of truth, and disregards them. *Id.* It then assumes the veracity of the remaining factual allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.* At the first step here, before the Court proceeds to any analysis of the substance of Abella's retaliation claim, several "conclusory allegations, unwarranted deductions of fact [and] legal conclusions masquerading as facts" must be identified and disregarded. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Though some of the offending allegations have been removed from the newest version,

Abella's pleading continues to be plagued by labels, conclusions, and formulaic recitations of the elements of a cause of action for First Amendment retaliation. Chief among them are the absurd allegations that Officer Rodriguez is "doing everything illegally possible acting under color of law," and that Officer Rodriguez waged a "campaign . . . to silence" him. *Id.* ¶¶ 19, 48, 79. Wild accusations like these are *Twombly* and *Iqbal*'s *bête noire*; they are "precisely the type of allegation that this Court has been directed to disregard." *Fernandez v. Sch. Bd. of Miami-Dade Cty.*, No. 15-21915, 2015 WL 9474616, at *4 (S.D. Fla. Dec. 29, 2015).

The pleading errors infest all corners of the Amended Complaint. Abella claims that Officer Rodriguez has engaged in "misconduct and history of the widespread and abuse [sic]," "unlawful misconduct of abuse and retaliation," and a "pattern of violat[ing] civil rights." *Id.* ¶¶ 14, 21, 60. But he never cites **one** time Officer Rodriguez was determined to have violated anyone's civil rights or engaged in misconduct, abuse, retaliation, or unlawful behavior—much less details a "widespread" "history" of such behavior. Abella alleges that he and his family "continue to be punished and retaliated against by" Officer Rodriguez for "engaging in a conduct [sic] protected by the First Amendment," *id.* ¶¶ 16, 98; alleges that Officer Rodriguez "continued to retaliate[] against [him] and his family for [his] filing grievances against him and engaging in conduct's [sic] protected by the First Amendment," *id.* ¶ 38; complains of "misconduct and injustice that Officer [Rodriguez] continued [sic]," and "unlawful behavior that continued to be done to [him] and his family by" Officer Rodriguez, *id.* ¶¶ 38, 97; and accuses Officer Rodriguez of "inflict[ing]" "ongoing and systematic police intimidation" upon him and his family, *id.* ¶ 57. But he doesn't shore up any of these conclusions with facts. And he claims that Officer Rodriguez "put[] pressure" on him "not to come forward with evidence," that Officer Rodriguez "orchestrated a situation" against him and "orchestrated" a "malicious and corrupt act" against him. *Id.* ¶ 21. What kind of "pressure"? What "evidence"? What "situation" or "malicious and corrupt act" did Officer

Rodriguez "orchestrate"? This new complaint, like the original, offers no answers.

Finally, Abella relaunches his previously fired litany of labels at Officer Rodriguez—and adds even more—flatly alleging that he

> "started" a "campaign" of "harassing and intimidating" him;
>
> engaged in "unlawful misconduct of harassing, stalking, intimidating and threatening" him;
>
> "followed stalked and intimidated" him;
>
> "followed, harassed, stalked and intimidated" him;
>
> "followed, intimidated and harassed" him;
>
> "follow[ed] harass[ed] and intimidate[d]" him and "ma[d]e hand gestures at" him;
>
> "followed harassed and shouted at" him;
>
> "followed and harassed" him;
>
> "followed, stalked and harassed" him;
>
> "continu[ed] to harass threaten intim[id]ate and violate" his civil rights;
>
> "continued to harass, intimidate, stalk, follow, threaten" him, and "deprive[] and violate[] [his] First Amendment rights";
>
> "followed" him;
>
> "followed" him, then "intimidat[ed] and harass[ed]" him with "disrespectable hand gesture[s]"
>
> "continue[d] to harass threaten intimidate" him;
>
> "continue[d] unlawful misconduct, harassing, stalking, intimidating, and threatning" and engaged in "misconduct and unlawful actions";
>
> "displayed . . . unlawful conduct and misbehavior";
>
> engaged in "unlawful misconduct";
>
> "repeatedly stalked and harassed" him;
>
> "conspired with [Alex Rey] to stalk, harass and intimidate" him;
>
> "continued repeatedly harass[ing] and intimidat[ing] [him] in retaliation for [his] conviction in the expression of his political opinions, and filing grievances against" Officer Rodriguez;
>
> took "retaliatory actions";
>
> engaged in "repeated unlawful retaliatory acts of harassment, stalking and intimidation";
>
> took "unlawful retaliatory actions";
>
> "repeated[ly] violat[ed]" his civil rights;

"continu[ed] unlawful misconduct of harassing, stalking, intimidating, and threatening" him; and

engaged in "misconduct, abuse of power, retaliation and harassment."

*Id.* ¶¶ 14, 20, 28, 30-31, 33, 37, 39-40, 42-47, 50, 54, 59, 70-75, 95, 107, 110 (all errors [sic]). These "naked assertions devoid of further factual enhancement" do not suffice. *Iqbal*, 556 U.S. at 678 (cleaned up). It's hard to imagine a complaint getting closer to the "unadorned, the-defendant-unlawfully-harmed-me" style of pleading rejected by *Twombly* and *Iqbal* than Abella's Amended Complaint does by alleging without support that a defendant did "everything illegally possible" (whatever that means) and "orchestrated a situation" (whatever *that* means), or by cobbling together what is now more than **two dozen** allegations from a grab bag of labels like "stalked," "harassed," "threatened," "intimidated," and "retaliated." In no way would Officer Rodriguez be fairly "apprised of the conduct that forms the basis of the charges against" him were the Court to permit this Amended Complaint, littered with vagaries and conclusions, to unlock the doors of discovery. *Franklin*, 738 F.3d at 1250. He cannot and should not be expected to craft any kind of rational response to the irrational allegation that he is, apparently, "doing everything illegally possible."

Looking past the conclusory labels, the overwhelming majority of the allegations do not state what **conduct** Officer Rodriguez actually engaged in. Abella instead alleges nothing more than that he committed "retaliation," violated his civil rights, etc., "without providing the facts from which one could draw such a conclusion." *Id.* at 1251; *see also Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 63 (1st Cir. 2018) (affirming dismissal of complaint where the allegations were "meager, vague, or conclusory, leaving the complaint largely within the realm of conjecture" (cleaned up)). This Court should strip away the Amended Complaint's bare legal conclusions, revealing the blatantly insufficient allegations that lie beneath.

OFFICE OF THE COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TEL. (305) 375-5151

### B. *Officer Rodriguez remains absolutely immune from any First Amendment retaliation claim arising from his testimony as a witness in Alex Rey's petition for an injunction against Abella.*

Abella's allegation that Officer Rodriguez testified falsely as a witness in Alex Rey's injunction proceeding in retaliation for Abella's complaints cannot give rise to a First Amendment claim. Officer Rodriguez is absolutely immune from civil claims arising from testimony he provided as a witness in that action.

Section 1983 does not permit recovery of damages against a police officer for testimony in a judicial proceeding. *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1467 & n.16 (3d Cir. 1992). "As with any witness testifying under oath, the penalty for false testimony is potential prosecution for perjury," not a civil suit for money damages under § 1983. *Scarbrough v. Myles*, 245 F.3d 1299, 1305 (11th Cir. 2001). In *Scarbrough*, the Eleventh Circuit emphasized the importance of allowing police officers to enjoy the same absolute immunity for testimony as do lay witnesses, in order to prevent an officer's "energy and attention from being diverted away from law enforcement responsibilities every time a disgruntled defendant accuses him of perjury." *Garrett v. Stanton*, No. 08-0175, 2010 WL 320492, at *3 n.3 (S.D. Ala. Jan. 18, 2010) (citing *Scarbrough*, 245 F.3d at 1305 & n.12). Officer Rodriguez is owed that immunity here. If any portion of the retaliation claim is premised on this testimony, it should be dismissed.

### C. *If any of Abella's new allegations could be construed as giving rise to a conspiracy claim, that claim fails.*

Abella adds several new allegations to the Amended Complaint accusing Officer Rodriguez of "conspiring" with Alex Rey to "stalk, harass and intimidate" Abella. Am. Compl. ¶¶ 71, 83, 89. These allegations do not state a claim of conspiracy. To do so, a plaintiff must allege that "(1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his

constitutional rights." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1327 (11th Cir. 2015). The Supreme Court held in *Twombly* that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556-57; *see also id.* at 557 ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement[—]but a court is not required to accept such terms as a sufficient basis for a complaint." (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999))); *accord Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) ("It is not enough to aver in the complaint that a conspiracy existed. A plaintiff claiming conspiracy under § 1983 must make particularized allegations that a conspiracy exists." (cleaned up)). The three times Abella claims that Officer Rodriguez "conspired" with Rey, he alleges no more than that—the two "conspired." The allegations lack any semblance of particularization or specificity, so any conspiracy claim must be dismissed.

> **D.    *Officer Rodriguez is entitled to qualified immunity from Abella's First Amendment retaliation claims arising from any remaining allegations.***

The doctrine of qualified immunity shields a public official acting within his discretionary authority from civil liability unless he has violated a federal statutory or constitutional right and the unlawfulness of his conduct was clearly established at the time. *City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015). Qualified immunity is nominally an affirmative defense, but once the defense is properly raised, the plaintiff has the burden immediately to negate it, for the defense is "an immunity from suit" that is "effectively lost if a case is erroneously permitted to go to trial," or even into discovery, before the court resolves the issue. *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (cleaned up); *Howe v. City of Enterprise*, 861 F.3d 1300, 1301-03 (11th Cir. 2017). "The 'breathing room' afforded by qualified immunity is generous; . . . 'it pro-

tects all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

To initially activate the defense, a defendant must show that he was acting within the scope of his discretionary authority. *Alcocer v. Mills*, 906 F.3d 944, 950 (11th Cir. 2018). As alleged in the Amended Complaint, Officer Rodriguez was acting within his discretionary authority as an MDPD officer at all relevant times. Am. Compl. ¶ 65; *accord Estate of Cummings*, 906 F.3d at 940 (explaining that a defendant satisfies his burden if he shows that he was "performing a legitimate job-related function (that is, pursuing a job-related goal) through means that were within his power to utilize" (cleaned up)). Thus, the burden shifts to Abella, whose claims risk dismissal unless he sufficiently alleges "(1) that the defendant violated one of his constitutional rights, and (2) that the right was clearly established at the time of the wrongful conduct." *J.W. ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1258 (11th Cir. 2018). He has not done so.

1. **Abella does not sufficiently allege that Officer Rodriguez violated any First Amendment right.**

Abella's allegations about Officer Rodriguez's conduct haven't changed, so Officer Rodriguez's arguments in response haven't, either. "To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). In describing each alleged encounter with Officer Rodriguez, Abella once again fails to satisfy either the second or third element of the claim, if not both.

Abella does not show that Officer Rodriguez acted in a way that adversely affected his protected speech. "[A] defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment

rights." *Id.* at 481 (cleaned up). Conduct that has been found to meet this standard includes issuing a BOLO to local law enforcement officers warning them to consider the plaintiff a danger to any officer and instructing them to "act accordingly," *id.* at 479; accessing confidential government databases containing information about the plaintiffs, attempting to obtain arrest warrants against the plaintiffs without probable cause, and producing and mailing flyers to local residents depicting the plaintiffs as criminals, *Bennett v. Hendrix*, 423 F.3d 1247, 1254-55 (11th Cir. 2005); stopping the plaintiff's car and detaining him for an unreasonable amount of time with guns drawn, *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002); publicly releasing confidential and humiliating details of the plaintiff's rape, *Bloch v. Ribar*, 156 F.3d 673, 680-81 (6th Cir. 1998); or even issuing parking tickets, because it invokes "the punitive machinery of government in order to punish [a plaintiff]," *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003). Officer Rodriguez's conduct does not rise to these levels.

Though a law-enforcement officer cannot "use his position to harass and intimidate individuals in retaliation for exercising their First Amendment rights," *Bailey*, 843 F.3d at 485, "government officials should not be liable when the plaintiff . . . suffers only a *de minimis* inconvenience to her exercise of First Amendment rights," *Bennett*, 423 F.3d at 1252 (cleaned up). After the conclusory allegations without supporting facts that Officer Rodriguez "stalked," "intimidated," "harassed," or "threatened" Abella are disregarded, what remains are allegations that he followed or simply waited for Abella at various points for indeterminate amounts of time over two-and-a-half years; made hand gestures on some occasions; and, in one instance, said the word "money." Some courts have held that allegations of more severe conduct than Officer Rodriguez's alleged conduct did not satisfy this element. In *Requena v. Roberts*, for example, the Tenth Circuit held that an officer calling a prisoner-plaintiff a "dumb Indian," harassing him "all night," and giving him unappetizing alternative meals without following proper procedure, "although un-

professional and unpleasant," did not constitute adverse action. 893 F.3d 1195, 1211 (10th Cir. 2018). If that arguably malicious conduct could not pass muster, Officer Rodriguez's benign conduct should not, either. At most, it could be characterized as *de minimis* inconveniences that would not deter a person of ordinary firmness from engaging in speech.

What's more, "while it is not dispositive, the plaintiff's actual response to the defendant's conduct 'provides some evidence of the tendency of that conduct to chill First Amendment activity.'" *Bethel v. Town of Loxley*, 221 F. App'x 812, 813 (11th Cir. 2006) (cleaned up) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005), *cited with approval in Bennett*, 423 F.3d 1247); *see also McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) ("The second element requires ***some showing*** that the plaintiff's exercise of free speech has been curtailed." (emphasis added) (cleaned up)); *Giraldo v. City of Hollywood*, 142 F. Supp. 3d 1292, 1308 (S.D. Fla. 2015). In *Naucke v. City of Park Hills*, the Eighth Circuit held that defendant city council members' name-calling and scolding of a plaintiff at council meetings, while "inappropriate," was not sufficient to deter a person of ordinary firmness, especially in light of the fact that the plaintiff continued to speak out against the city council on numerous occasions. 284 F.3d 923, 928 (8th Cir. 2002). Abella similarly engaged continually in political speech, undeterred, for over two years after the first encounter with Officer Rodriguez; he advances no allegation that he ever considered stopping or slowing his speech after subsequent encounters, either. With that in mind, it's hard for him to ingenuously argue that a person of ordinary firmness would find that random sporadic following, hand gestures, or a single-word utterance, without more, had any tendency to chill his engaging in the protected conduct of complaining about that officer. He again fails to satisfy the second element of a retaliation claim.

Abella also fails to satisfy the third, because he does not plausibly allege that a causal connection exists between Officer Rodriguez's conduct and his own speech. The speech must be a

"motivating factor" behind the defendant's alleged retaliatory conduct. *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013). In other words, a plaintiff "must show that the defendant was subjectively motivated to take the adverse action because of the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). It goes without saying that the defendant cannot have had that motivation if he was not first "***aware*** of the protected conduct," *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1324 (S.D. Fla. 2014) (emphasis added) (quoting *Thampi v. Manatee Cty. Bd. of Comm'rs*, 384 F. App'x 983, 990 (11th Cir. 2010)), and he cannot have been aware of the protected conduct unless he had "***actual knowledge***" of it, *Wall-DeSousa v. Fla. Dep't of Hwy. Safety & Motor Vehicles*, 691 F. App'x 584, 591 (11th Cir. 2017) (emphasis added). It logically follows then that if the defendant did not actually know of the plaintiff's protected conduct before taking some action, that action cannot be "retaliatory" and he cannot be held liable for retaliation. *Farrow v. West*, 320 F.3d 1235, 1249 (11th Cir. 2003); *Burch v. City of Florence*, 913 F. Supp. 2d 1221, 1251 (N.D. Ala. 2012). Abella does not allege that Officer Rodriguez was at all aware of his grievances. He states that he sent emails to the Town of Miami Lakes Police Department, the Town of Miami Lakes, and the Miami Dade Police Department, but he never states that Officer Rodriguez had actual knowledge that the emails existed or had actual knowledge about their content.

Ironically, the case that best highlights Abella's failure to allege this element of the claim is his own previous litigation against Officer Rodriguez. There, Abella asserted similar retaliation claims arising from Officer Rodriguez's alleged issuance of a parking ticket in response to Abella's grievances about him. In finding that Abella had plausibly stated a causal connection, Judge Altonaga relied heavily on his allegation that "[t]he police acknowledged that they were aware of Plaintiff's complaints and indicated they were acting in response." *Abella v. Simon*, 831 F. Supp. 2d 1316, 1346 (S.D. Fla. 2011) (citing paragraph 50 of the operative complaint). The "police" to

which Judge Altonaga referred was Officer Rodriguez, and the paragraph to which she cited alleged the following:

> When Officer Rodriguez was writing the citation he stated to Plaintiff that "the complaints he filed with the Commission on Ethics was not going to do anything to him," . . . and stat[ed] that all those complaints . . . will not get anything and . . . will not be able to prove anything."

Am. Compl. ¶ 50, *Abella v. Simon*, No. 11-20152 (S.D. Fla. Feb. 9, 2011), ECF No. 17, attached as **Exhibit A**.[6] In a later iteration of his complaint, Abella accused Officer Rodriguez of retaliating against him for comments he'd made in Miami Lakes town meetings and alleged that Officer Rodriguez was present at every town meeting and heard those comments. Third Am. Compl. ¶ 16, *Abella v. Simon*, No. 11-20152 (S.D. Fla. Nov. 9, 2012), ECF No. 118, attached as **Exhibit B**. In finding that Abella had alleged a causal connection there, as well, Judge Altonaga noted that he had "specifically allege[d] that Rodriguez knew about Abella's protected speech (voicing his opinions in town meetings in Rodriguez's presence . . . )." *Abella v. Simon*, No. 11-20152, 2012 WL 12888572, at *5 (S.D. Fla. Dec. 31, 2012), *aff'd*, 522 F. App'x 872 (11th Cir. 2013) (citing paragraph 16 of the third amended complaint). While in the prior litigation Officer Rodriguez was alleged to have acknowledged that Abella made complaints against him and to have been present in town meetings when Abella made comments, any allegations of Officer Rodriguez's knowledge or presence are conspicuously absent here. Abella may have shown causation then, but he doesn't show it now. Officer Rodriguez had no knowledge of the alleged complaints. Without knowledge of the protected conduct, he could not be aware of it; and without awareness of it, he could not

---

[6] On a motion to dismiss, courts are ordinarily limited to considering the face of the complaint and any documents attached to it. However, "a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015). Along these lines, a district court "may take judicial notice of and consider documents which are public records, [and] that are attached to a motion to dismiss." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014). This exhibit is a public record—an iteration of Abella's complaint in a prior case against this Defendant—so its authenticity cannot be challenged. It is central to his claim because it shows his inability to successfully plead a retaliation claim now as he was able to then.

have retaliated on the basis of it. *Farrow*, 320 F.3d at 1249. Even if it could be inferred that Officer Rodriguez **knew** about the grievances, an inference that he was **motivated** by them to take adverse action based on nothing but Abella's say-so would be an inference "based on speculation and conjecture[, which] is not reasonable." *City of Riviera Beach v. Unnamed Gray, Two Story Vessel*, 649 F.3d 1259, 1272 (11th Cir. 2011) (cleaned up), *rev'd on other grounds sub nom. Lozman v. City of Riviera Beach*, 568 U.S. 115 (2013).

Abella also cannot establish the causal connection because he does not "identify a sequence of events from which a retaliatory motive can be inferred." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1344 (S.D. Fla. 2014) (cleaned up). Although a court may consider temporal proximity in determining whether a plaintiff has established causation, "mere temporal proximity, without more, must be 'very close'" to satisfy the burden. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), *cited in Brannon v. Finkelstein*, No. 10-61813, 2017 WL 1395171, at *6 (S.D. Fla. Feb. 1, 2017), *report and recommendation adopted*, 2017 WL 1452944 (S.D. Fla. Feb. 17, 2017) (Graham, J.). *Compare Akins v. Fulton County*, 420 F.3d 1293, 1305 (11th Cir. 2005) (finding "close temporal proximity" when defendant began retaliating against plaintiffs the day of their protected conduct), *and Bailey*, 843 F.3d at 479 (finding that the plaintiff had established causation where he asserted that the defendants began retaliating against plaintiff's the same night he made complaints about racial profiling and other unconstitutional behavior by police officers and sheriff's deputies), *with Smith v. Sec'y, Fla. Dep't of Corr.*, 696 F. App'x 944, 952-53 (11th Cir. 2017) (affirming district court's finding of no causal connection where plaintiff's only causation evidence was a three-week temporal proximity between his protected conduct and defendant's adverse action), *and Ramzy v. Columbus Consol. Gov't*, No. 15-0002, 2017 WL 440262, at *10 (M.D. Ga. Feb. 1, 2017) (characterizing a causal connection based solely on temporal proximity of two

months between protected speech and adverse action as "weak").

The temporal proximity between Abella's protected conduct and many of the encounters with Officer Rodriguez ranges from weeks to months. Abella alleges the dates he engaged in protected conduct only four times: he emailed grievances on March 22 and April 27, 2016, and on January 17, 2018; he placed a sign on his car on May 17, 2016. He alleges a range of one other instance of protected conduct: he put political magnets on his car at some point during the fall of 2016. And while he claims he emailed complaints "throughout" 2017 and 2018, he does not state when. Encounters 2, 3, 4, and 5 took place three weeks (June 8, 2016), five weeks (June 26), and nearly four months (September 13 and 15) after he posted the sign on his car. Encounter 7 took place at least two months (December 6) after he placed the political magnets on his car. And encounters 10, 11, 12, and 13 took place three weeks (February 6, 2018), six or seven weeks (March 1 and 7), and almost nine months (October 4) after he sent his last dated email. Such prolonged lapses of time are too attenuated, without more, to support causation.

Because of his failure to satisfy one or more critical elements of the cause of action, Abella cannot show that these encounters—considered separately or together—support a claim that Officer Rodriguez violated his First Amendment rights. Accordingly, Officer Rodriguez is entitled to qualified immunity.

> 2. **Abella does not allege that Officer Rodriguez's conduct violated any clearly established right.**

Assuming Abella *did* adequately allege that Officer Rodriguez's conduct violated a constitutionally protected right, he fails to allege that that right was clearly established at the time of his conduct. "Clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). For a right to be clearly established, it

> must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (cleaned up). A plaintiff seeking to abrogate an officer's right to qualified immunity must show that it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (per curiam) (cleaned up). If then-existing precedent does not "place the constitutionality of the officer's conduct," in the situation he confronted, "beyond debate," qualified immunity must be granted. *Wesby*, 138 S. Ct. at 589 (cleaned up); *see also Marsh v. Butler County*, 268 F.3d 1014, 1030-31 (11th Cir. 2001) (en banc) (stating that an officer is entitled to qualified immunity unless "the pre-existing law dictates, that is **truly compels**, the conclusion for all reasonable similarly situated public officials that what a defendant was doing violated a plaintiff's federal rights in the circumstances" (emphasis added) (cleaned up)), *abrogated on other grounds by Twombly*, 550 U.S. 544. "It is the plaintiff's burden to find" the relevant precedent. *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018).

The right the plaintiff purports to invoke "must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam). Consistent with this instruction, the Eleventh Circuit recognized three weeks ago that a "general right to be free from retaliation for one's speech" is too broadly defined to be a clearly established right. *Echols v. Lawton*, — F.3d —, 2019 WL 324550, at *3 (11th Cir. Jan. 25, 2019) (quoting *Reichle v. Howards*, 566 U.S. 658, 665 (2012)); *accord Karns v. Shanahan*, 879 F.3d 504, 522 (3d Cir. 2018) (rejecting similar articulation, that "the First Amendment prohibits government officials from subjecting individuals to retaliation for their protected speech," as too abstract a formulation of a right to be clearly estab-

lished). The Amended Complaint merely asserts, in various ways, that Officer Rodriguez "violated [his] First Amendment rights and/or retaliated against [him] as a result of [his] exercising his First Amendment rights." Am. Compl. at 1. Allegations like these fall well wide of the mark. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (reiterating that clearly established law should not be defined "at a high level of generality" (quoting *al-Kidd*, 563 U.S. at 742)). By not alleging what settled law compels the conclusion that, in the particular circumstances he faced, Officer Rodriguez's conduct violated some specifically defined, clearly established constitutional right, Abella cannot overcome Officer Rodriguez's entitlement to qualified immunity.

## CONCLUSION

Despite being informed by Officer Rodriguez of several deficiencies in his original complaint, Abella persists in his inability to properly plead a First Amendment retaliation claim. Count II, to the extent it arises from any allegation other than those involving the encounter of May 17, 2016, should be dismissed with prejudice.

Dated: February 14, 2019.                   Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY
Stephen P. Clark Center
111 N.W. First Street, Suite 2810
Miami, Florida 33128
(305) 375-5151

By:   /s/ Zach Vosseler
      Zach Vosseler
      Assistant County Attorney
      Florida Bar No. 1008856
      zach@miamidade.gov

*Counsel for Defendants Miami-Dade County and Officer Juan Rodriguez*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served this day, February 14, 2019, on all counsel or parties of record in the manner indicated on the Service List below.

/s/ Zach Vosseler
Zach Vosseler
Assistant County Attorney

## SERVICE LIST

*Abella v. Town of Miami Lakes*
**No. 18-cv-24889-GRAHAM/McALILEY**

Gustavo Abella
7400 Miami Lakes Drive, Apt. D108
Miami Lakes, Florida 33014
(305) 305-6622
gusabella4@gmail.com

*Plaintiff, pro se*

**Service via e-mail***

Eric P. Hockman
ehockman@wsh-law.com
Eric S. Kay
ekay@wsh-law.com
WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.
2525 Ponce de Leon Boulevard, Suite 700
Coral Gables, Florida 33134
(305) 854-0800

*Counsel for Defendants Town of Miami Lakes and Alex Rey*

**Service via CM/ECF**

David S. Henry
dhenry@kelleykronenberg.com
Jordan M. Greenberg
jgreenberg@kelleykronenberg.com
KELLEY KRONENBERG
8201 Peters Road, Suite 4000
Fort Lauderdale, Florida 33324
(954) 370-9970

*Counsel for Defendant Michael Pizzi*

**Service via CM/ECF**

---

\*   Though the Plaintiff consented to receive Notices of Electronic Filing [ECF No. 8], he represented to Defendants' counsel that he has not yet been able to receive any filings via CM/ECF. Until he can resolve his issues with the system, he has consented to receive filings via e-mail.