UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 18-24889-CIV-GRAHAM

GUSTAVO ABELLA,

     Plaintiff,

vs.

TOWN OF MIAMI LAKES, et al.,

     Defendants.

_____/

### ORDER

**THIS CAUSE** came before the Court on Defendant Miami-Dade County's Motion to Dismiss Amended Complaint [D.E. 30], Defendant Officer Juan Rodriguez's Partial Motion to Dismiss the Amended Complaint [D.E. 31], Defendant Town of Miami Lakes Mayor Michael Pizzi's Motion to Dismiss [D.E. 37], and Defendant Town of Miami Lakes and Town of Miami Lakes Manager Alex Rey's Motion to Dismiss Amended Complaint [D.E. 38].

**THE COURT** has considered the motion and applicable law and is otherwise fully advised in the premises.

### I.    BACKGROUND

Plaintiff Gustavo Abella ("Abella" or "Plaintiff") is a resident of Miami Lakes, Florida. Defendant Officer Rodriguez ("Rodriguez") is a Miami Dade Police ("MDPD") Officer assigned to the Town of Miami Lakes. [D.E. 26, ¶¶ 9 and 57]. Abbela complains

that, on various occasions between 2016 and 2018, Rodriguez, Town of Miami Lakes Manager Alex Rey ("Rey"), and former Town of Miami Lakes Mayor Michael Pizzi ("Pizzi"), retaliated against Abella for displaying a political sign on his truck and filing grievances against Rodriguez, conduct protected by the First Amendment. Specifically, Abella alleges that Rodriguez ordered Abella to remove the sign from his truck; threatened to issue a citation to Abella if he failed to remove the sign; appeared outside Abella's home; and followed Abella around town. Abella also alleges that in retaliation for exercising his First Amendment rights, Rodriguez appeared as a witness at a judicial proceeding that resulted in an injunction order against Abella.

Abella further alleges that during the period between 2016 and 2018, he and his wife sent numerous emails reporting Rodriguez's misconduct to Defendants Miami-Dade County ("MDC"), Town of Miami Lakes("Town"), Rey, and Pizzi. Abella complains that Defendants MDC, Town, Rey and Pizzi were deliberately indifferent to Abella's grievances filed against Rodriguez and failed to discipline Rodriguez for his alleged misconduct.

Abella also complains that Rey personally participated in the ongoing harassment of Abella and his family by directing a group of police officers to accompany Rodriguez "to deprive and deter" Abella of his rights. [D.E. 26, ¶83]. Abella further alleges that Rey arrived at a community center voting precinct where Abella was

volunteering for a political rival "with the intention and premeditation" to have Abella arrested. Abella alleges that he "had no choice but to leave" upon Rey's arrival. [D.E 26, ¶87]. Abella further alleges that in retaliation for filing grievances against Rodriguez, Rey conspired with Pizzi to obtain an injunction barring Abella from the Town of Miami Lakes Police Department, Town Hall, and various stores on Main Street.[D.E. 26, ¶90].

Finally, Abella's complaint alleges that in retaliation for displaying a political sign and filing grievances against Rodriguez, Pizzi sent an email directing Rey to obtain an injunction against Abella.

Abella complains of retaliation for exercising his rights under the First Amendment in violation of 42 U.S.C. § 1983. [D.E. 26]. Abella's *Pro se* Amended Complaint sets forth five counts: Count I alleges that Defendant Town of Miami Lakes was deliberately indifferent to Abella's First Amendment rights; Count II alleges that Officer Rodriguez violated Abella's First Amendment rights; Count III alleges that Manager Rey retaliated against Abella for exercising his First Amendment rights; Count IV alleges that Mayor Pizzi retaliated against Abella for exercising his First Amendment rights; and Count V alleges that Miami-Dade County ("MDC") was deliberately indifferent to Abella's First Amendment rights.

All Defendants have moved to dismiss Abella's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted. [D.E. 30, 31, 37, and 38]. In so doing, Rodriguez, Rey, and Pizzi raise the defense of qualified immunity. Abella filed responses to all Defendants' motions to dismiss. [D.E. 33 and 43]. The Defendants filed replies to same. This matter is now ripe for the Court's consideration.

## II. LEGAL STANDARD

*Pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotation marks and citations omitted).

When ruling on a 12(b)(6) motion to dismiss, district courts must accept the facts set forth in the complaint as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the defendant-unlawfully-harmed-me accusation[s]." McCullough, 907 F.3d at 1333 (citation omitted).

4

"A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." McCullough, 907 F.3d at 1333 (internal quotations omitted); see also Twombly, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" McCullough, 907 F.3d at 1333 (quoting Iqbal, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. Iqbal, 556 U.S. at 678. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557) (alteration in original).

In reviewing the Amended Complaint, the Court is cognizant that, in this circuit, heightened pleading requirements exist for civil rights cases, especially those involving the defense of qualified immunity. Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). To meet the heightened pleading standard, the complaint must allege the relevant facts with some specificity and plaintiffs cannot rely on vague or conclusory allegations Gonzalez, 325 F.3d at 1235 (citation and quotations omitted); Epps v. Watson, 492 F.3d 1240, 1242-43 (11th Cir. 2007). Mindful of the aforementioned standard, the Court addresses each Defendant's motion in turn.

5

### III. ANALYSIS

### A.   Town of Miami Lakes Motion to Dismiss (Count I)

In Count I, Abella alleges that the Town exhibited deliberate indifference to civilian complaints by failing to respond to and taking no action to correct the alleged misconduct of Rodriguez. Further, this deliberate indifference and failure to act against, re-train, or discipline Rodriguez resulted in repeated violations of Abella's constitutional rights. [D.E. 26, ¶¶ 53-56]. Finally, Abella claims, as a form of intimidation, the Town instructed a police officer to park directly behind Abella's car on one occasion in January 2017. Id. ¶ 41.

A municipality may be subject to liability under Section 1983, but only when by "policy" or "custom" it has precipitated the deprivation of constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978). A policy is a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479-80 (11th Cir. 1991). A custom is a practice that is so settled and permanent that it takes on the force of law. Monell, 436 U.S. at 690-91.

Where a municipality's failure to train or supervise its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants, such a shortcoming

6

may constitute a "policy or custom" actionable under Section 1983. City of Canton v. Harris, 489 U.S. 378, 389 (1989). To establish deliberate indifference, a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

Abella also seeks to hold the Town liable for the First Amendment right violations allegedly committed by Rodriguez. A Section-1983 action against a governmental official in his official capacity is deemed a suit against the municipality or entity that employs him. Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999). The doctrine of *respondeat superior,* the tort principle which holds an employer liable for the acts of an employee committed in the course and scope of the employment, does not apply in the § 1983 context. Monell, 436 U.S. at 691, 98 S. Ct. at 2036. Instead, as previously noted, to impose § 1983 liability on the Town, Abella must show that the municipality had a custom or policy that constituted deliberate indifference to the constitutional right violated. McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004). An isolated incident does not demonstrate evidence of the Town's "persistent" or "widespread" policy. Id. at 1290-91.

In Count I, Plaintiff essentially alleges that the Town is vicariously liable for the misconduct of Officer Rodriguez.

Plaintiff does not however sufficiently allege that the Town had a custom or policy that constituted deliberate indifference, nor does he allege that a policy or custom caused the violation of his constitutional rights. Barr v. Gee, 437 F. App'x 865, 874 (11th Cir. 2011).   Although Plaintiff alleges that he filed multiple complaints against Officer Rodriguez, nowhere does he alleged that the Town was aware of the constitutional violations or that the likelihood of a constitutional violation was so high the need for training would be obvious to the Town. Instead, Plaintiff's claim of the Town's policy of deliberate indifference to civilian complaints rests solely on his personal experience. Plaintiff's primary complaint is the Town's failure to respond to his and his wife's numerous emails.  Plaintiff's reliance on his personal isolated complaints and the Town's failure to respond to same is insufficient to establish the necessary policy or custom. Moreover, the number of Plaintiff's complaints bears no relation to their validity. Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987); see also Barr, 437 Fed. Appx. at 875 ("[E]mployees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference of such a policy"). As employees' actions do not imply municipal liability absent an official policy or custom, and a single incident does not support an inference of such a policy, Plaintiff fails to state a claim for municipal liability. See McDowell, 392 F.3d at 1290-91.

8

To the extent that Plaintiff alleges a failure to train, he fails to allege facts supporting a plausible inference either that the Town was on notice beforehand of a need to train with respect to the alleged violations, or that the Town made a deliberate choice not to do so. *See* Twombly, 550 U.S. at 555, 570, 127 S. Ct. at 1964-65, 1974; Lewis v. City of W. Palm Beach, Fla., 561 F.3d 1288, 1293 (11th Cir. 2009). In his Amended Complaint Abella concedes that Officer Rodriguez is a "Miami Dade Police [officer] assigned to the town of Miami Lakes," and not a *Town* employee. [*see* D.E. 26, ¶¶ 53-57] Notably, Abella fails to allege that either the Town, Pizzi, or Rey had any supervisory authority, control over discipline, or duty to train the MDPD officers assigned to the Town. The Court will not impute the MDC's alleged failure to train to the Town under these circumstances. Accordingly, Abella fails to allege a cause of action against the Town. On this basis, the Town's motion is granted and Count I of Plaintiff's Amended Complaint is dismissed.

**B.   Officer Rodriguez's Partial Motion to Dismiss (Count II)**

Officer Rodriguez does not contest that Abella plausibly states a claim for retaliation based on a May 17, 2016 encounter in which Rodriguez allegedly threatened to ticket Abella if he did not remove a political sign from his car. [D.E. 26, ¶¶ 27-30]. However, Rodriguez moves to dismiss Count II to the extent a claim arose

9

from any other allegation, arguing that: (1) the Amended Complaint's numerous conclusory allegations should be disregarded; (2) he is absolutely immune from a retaliation claim arising from any testimony as a witness in Defendant Alex Rey's injunction proceeding against Plaintiff; (3) the Amended Complaint fails to state a cause of action for retaliation because it does not demonstrate that Rodriguez's conduct adversely affected protected speech, or that a causal connection existed between any protected speech and his alleged retaliatory actions; and (4) he is otherwise entitled to qualified immunity because Abella fails to allege that Rodriguez violated any First Amendment right or that his conduct violated clearly established law.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." Echols v. Lawton, 913 F.3d 1313, 1319 (11th Cir. 2019)(citations omitted). To obtain a dismissal based on qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." Id. Where, as here, it is clearly alleged and undisputed that Rodriguez was acting within his discretionary authority, the burden shifts to Abella to overcome qualified immunity. Echols, 913 F.3d at 1319.

To overcome qualified immunity, a plaintiff must "plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Id. (internal citations omitted). Plaintiff must satisfy both prongs of the analysis to overcome a defense of qualified immunity. Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016); Echols, 913 F.3d at 1319. In determining whether Abella satisfied his burden, the Court must determine whether the Amended Complaint sufficiently states a First Amendment retaliation claim.

To determine if a complaint survives a motion to dismiss, the Court is instructed to use a two-step framework. McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018). The first step is to identify the allegations that are "no more than mere conclusions." Id. (quoting Iqbal, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." Id. (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679).

With the elimination of the numerous legal labels and conclusions contained in Abella's Amended Complaint there is limited factual specificity as to Officer Rodriguez's conduct and how that conduct violated Plaintiff's constitutional rights. [D.E.

11

26]. However, taking the remaining facts in the light most favorable to Abella, the Court finds that he sufficiently alleges a plausible claim that Officer Rodriguez violated Abella's clearly established First Amendment right. Specifically, notwithstanding the May 17, 2016 encounter, Abella alleges the following specific encounters during which Abella alleges Rodriguez harassed, stalked, followed, and intimidated him for exercising his Frist Amendment rights [D.E. 26]:

Encounter 1 (June 8, 2016): Officer Rodriguez "followed and stalked and intimidated" Abella. Id. ¶ 28.

Encounter 2 (June 29, 2016): Officer Rodriguez "was waiting for [Abella] to exit his home." Id. ¶ 29.

Encounter 3 (September 13, 2016): Officer Rodriguez "appeared outside" Abella's residence and "followed, harassed, stalked, and intimidated" him "all the way to [his] bank." Id. ¶ 30.

Encounter 4 (September 15, 2016): Officer Rodriguez "followed, intimidated and harassed" Abella "through Miami Lakes and onto the Palmetto Expressway." Id. ¶ 31.

Encounter 5 (sometime between September and October 2016): Abella left his house with magnets on his car supporting the campaign of a candidate for Miami Lakes Town Council, and Officer Rodriguez "followed, harassed and intimidated" him and "ma[de] hand gestures at" him.

Id. ¶ 33.

Encounter 6 (December 6, 2016): Officer Rodriguez "followed, harassed and shouted" at Abella. Id. ¶ 37.

Encounter 7 (January 10, 2018): Officer Rodriguez "appeared and followed and harassed" Abella "making hand gestures." Id. ¶ 39.

Encounter 8 (January 11, 2018): Officer Rodriguez "followed, stalked and harassed" Abella. Id. ¶ 40.

Encounter 9 (February 6, 2018): Officer Rodriguez "appeared" outside Abella's residence and followed him to his bank. Id. ¶ 44.

Encounter 10 (March 1, 2018): Officer Rodriguez followed Abella until he pulled into his home. Id. ¶ 45.

Encounter 11 (March 7, 2018): Officer Rodriguez "followed and then drove parallel to [Abella's] car on the driver's side intimidating and harassing" his daughter "with disrespectable hand gesture[s]" as she drove the car. Id. ¶ 46.

Encounter 12 (October 4, 2018): Officer Rodriguez "appeared" and "harass[ed]," "threaten[ed]," and "intimidate[d]" Abella. Id. ¶ 47.

Even if Abella was not deterred by being followed, harassed, and intimated by Rodriguez's alleged conduct, the Court finds that Rodriguez's alleged actions "would likely deter a person of

ordinary firmness from the exercise of First Amendment rights."

Abella v. Simon, 522 Fed. Appx. 872, 874 (11th Cir. 2013). Because

these allegations are sufficient to abrogate Rodriguez's qualified

immunity, the Court denies Officer Rodriguez's motion to dismiss

with respect to the encounters listed above and grants his motion

as to all other conclusory claims.

     C.   **Manager Alex Rey's Motion to Dismiss (Count III)**

     Alex Rey ("Rey") served as Town of Miami Lakes Manager during

all relevant times. Rey moves for dismissal contending that Abella

fails to state a claim for First Amendment retaliation. Also, Rey

asserts that he is entitled to qualified immunity because Abella

fails to sufficiently allege a violation of any clearly established

First Amendment right. [D.E. 38].

     As with Officer Rodriguez, because it is clearly alleged and

undisputed that Rey was acting within his discretionary authority,

the burden shifts to Abella to overcome qualified immunity. To

satisfiy his burden, Count III must sufficiently state a claim

against Rey for First Amendment retaliation. In making this

determination, the Court is to keep in mind the heightened pleading

requirements in civil rights cases against individual defendants.

Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (citations

omitted). If the Amended Complaint does not sufficiently allege

that Rey violated Abella's constitutional rights, then Rey is

entitled to qualified immunity. Id. At 1235-36.

To survive a motion to dismiss, a plaintiff who complains of retaliation for exercising rights protected by the First Amendment must allege that: (1) he engaged in protected speech; (2) the official's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the official's retaliatory conduct. Echols v. Lawton, 913 F.3d 1313, 1320 (11th Cir. 2019).

Rey does not contend that Abella failed to establish the first element- that he engaged in protected speech. Instead, Rey argues that Abella's First Amendment claim fails under the second prong because Rey's alleged retaliatory conduct could not plausibly deter a person of ordinary firmness from exercising their First Amendment rights. [D.E. 38]. Rey also asserts that Count III fails under the third prong because Abella pleads no facts by which it can be plausibly inferred that Rey took his alleged retaliatory action because of Abella's exercise of his First Amendment Rights.

With respect to the second element, a defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. Bailey v. Wheeler, 843 F.3d 473, 481 (11th Cir. 2016). In Count III, Abella alleges that Rey's retaliatory conduct consisted of: (1) obtaining an injunction order against Abella; (2) "orchestration" of a judgment against Abella; (3) and arriving at a community center voting precinct causing Abella to

15

voluntarily leave in fear of possibly being arrested.

As alleged, the Court does not find that Rey's conduct "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." First, Abella does not allege the basis for the injunction order successfully obtained by Rey; or how the injunction, that "remains in effect indefinitely," prohibits him from displaying a political sign, filing grievances or exercising any other First Amendment right. [D.E. 26, ¶ 23]. Similarly, Abella fails to allege the basis for the judgment entered in the 2008 Miami-Dade Circuit Court case or how Rey "orchestrated" same. Likewise, there is no allegation how Rey's arrival at the community center deterred or deprived him from exercising his First Amendment rights. Specifically, Abella does not allege any conversation, contact, threat of arrest or citation, directive or interaction of any sort with Rey. Based on these facts, drawing all reasonable inferences in Abella's favor, the Court does not find that Rey's alleged retaliatory conduct adversely affected Abella's protected speech.

Assuming arguendo that Abella established that Rey's conduct adversely affected his protected speech, Abella fails to establish the third prong, causal connection. Specifically, Abella fails to allege how his protected speech was Rey's motivation for obtaining an injunction order that prohibits Abella from "going freely near or within 400 feet of the Town of Miami Lakes Police Department,

16

Town Hall and certain stores on Main Street." [D.E. 26, ¶¶ 101-103]. It is equally unclear how Rey's arrival at the community center was in retaliation for Abella's protected conduct. As alleged, Abella left the community center upon Rey's arrival without any interaction with Rey or confirmation that Rey was aware of Abella's presence. Based on these facts, the Court cannot find a causal connection between Rey's actions and Abella's protected speech. For these reasons, the Court does not find that Abella sufficiently alleged that Rey violated his First Amendment rights.

Even if Abella established that Rey violated his First Amendment right, the Court does not find that the right was clearly established. An official's conduct violates clearly established law when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Echols, 913 F.3d at 1323. Whether the official had "fair warning" and notice that his conduct violated the constitutional right in question drives the inquiry. Bailey 843 F.3d at 483. As alleged, Rey would not have understood that his alleged conduct, including failure to respond to Abella's email, seeking and obtaining an injunction and arrival at a community center voting precinct, would have violated the First Amendment. Accordingly, Rey is entitled to qualified immunity, Rey's motion to dismiss is granted, and Count III is dismissed.

D.   **Former Mayor Pizzi's Motion to Dismiss (Count IV)**

Mr. Pizzi served as the elected mayor of the Town of Miami Lakes until January 2017. In Count IV Abella alleges that Pizzi employed a policy of deliberate indifference to the repeat violations of his civil rights by Rodriguez. Also, Abella, alleges that in retaliation for his exercise of his First Amendment rights, Pizzi directed Rey and Rodriguez to obtain an injunction order against him. Id. ¶¶ 99-101.

Pizzi moves to dismiss Count IV of the Amended Complaint asserting that Abella fails to plausibly allege a claim for First Amendment retaliation against Pizzi and that he is entitled to qualified immunity because Abella does not allege that his conduct violated a clearly established right. [D.E. 37].

It is undisputed that at all relevant times Pizzi acted within his discretionary authority. It is also undisputed that Abella's numerous complaints against Rodriguez or his display of a political sign is constitutionally protected speech. The burden therefore shifts to Abella to establish with specificity that Mr. Pizzi's actions violate clearly established constitutional law. City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (per curiam).

To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that: (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the

18

speech and the defendant's retaliatory actions." <u>Bailey v. Wheeler</u>, 843 F. 3d 473, 480 (11th Cir. 2016). Abella fails to meet his burden of sufficiently alleging that Pizzi violated his First Amendment right with the directive to Rey to obtain an injunction against Abella or in his failure to respond to his complaints. Specifically, Abella fails to allege how Pizzi's directive to file and obtain an injunction prohibiting Abella from "going freely near or within 400 feet of the Town of Miami Lakes Police Department, Town Hall and certain stores on Main Street" adversely affected his protected behavior. [D.E. 26, ¶¶ 101-103]. "[A] defendant adversely affects protected speech if his alleged retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. <u>Bailey v. Wheeler</u>, 843 F. 3d 473, 481 (11th Cir. 2016). As alleged, the injunction order, obtained by Rey at the direction of Pizzi, and that "remains in effect indefinitely," does not prohibit Abella from displaying a political sign or filing grievances. [D.E. 26, ¶ 23]. Just as Abella is undeterred by the injunction, it is also unlikely that Pizzi's alleged actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights." <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1254 (11th Cir. 2005). Having failed to satisfy the Eleventh Circuit requirements, Abella's allegations are insufficient to abrogate Pizzi's qualified immunity. Accordingly, Pizzi is entitled to

19

qualified immunity, Pizzi's motion is granted and Count IV is dismissed.

**E.   Defendant Miami-Dade County's Motion to Dismiss (Count V)**

In Count V, Abella alleges that on several occasions between 2016 and 2018, he sent emails to the MDPD complaining about Rodriguez's harassing conduct. [D.E. 26]. Abella alleges that MDC exhibited a deliberate indifference to his constitutional rights by failing to respond to his email grievances or investigate Rodriguez's misconduct and retaliatory actions. [D.E. 26, ¶¶ 107-108]. Further, Abella alleges that MDC "has been indifferent and has failed to correct, reprimand, discipline, counsel, re-assign, re-train, and/or fire" Rodriguez. [D.E. 26, ¶ 112].

MDC moves to dismiss Count V contending that Abella fails to state a municipal liability claim under § 1983. Also, MDC asserts that because the allegations with respect to Rodriguez's conduct in Count V parallel the allegations in Count II, the Court should dismiss the official-capacity claim against Rodriguez in Count II as duplicative. [D.E. 30].

Here, construing the allegations of the Amended Complaint in a light most favorable to Abella, the Court finds that Abella fails to set forth an actionable Monell claim against MDC. Similar to Count I, Abella fails to state or even suggest that MDC had a custom or policy that constituted deliberate indifference to his First Amendment rights, nor does he allege that a MDC policy or

20

custom caused the violation of his constitutional rights. Instead, Abella's claims address MDC's failure to respond to his numerous emails. As previously noted, Abella's reliance on his personal isolated complaints and MDC's failure to respond to same is insufficient to establish the necessary policy or custom.

Additionally, in Count II, Abella names Rodriguez as a Defendant in both his individual and official capacity. "Suits against state officials in their official capacity are 'only another way of pleading an action against an entity of which an officer is an agent.'" Green v. Graham, 906 F.3d 955, 962 (11th Cir. 2018) (quoting Hafer v. Melo, 502 U.S. 21, 25 (1991)). Abella's official capacity claim against Rodriguez is therefore duplicative of his claim against MDC. See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991) ("To keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury."). On this basis the Court grants MDC's Motion to Dismiss as to Count V and the official-capacity claim against Officer Rodriguez in Count II.

**IV.  CONCLUSION**

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant Miami-Dade County's Motion to Dismiss Amended Complaint [D.E. 30] is **Granted. Count V and the official-capacity claim against Officer Rodriguez in Count II are**

DISMISSED. It is further

ORDERED AND ADJUDGED that Defendant Officer Juan Rodriguez's Partial Motion to Dismiss the Amended Complaint [D.E. 31] is **GRANTED in part and DENIED in part**. It is further

ORDERED AND ADJUDGED that Defendant Town of Miami Lakes Mayor Michael Pizzi's Motion to Dismiss [D.E. 37] is **GRANTED. Count IV is DISMISSED.** It is further

ORDERED AND ADJUDGED that Defendant Town of Miami Lakes and Town of Miami Lakes Manager Alex Rey's Motion to Dismiss Amended Complaint [D.E. 38] is **GRANTED. Count I and Count III are DISMISSED.**

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of April, 2019.

_____
DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE


cc:  All Counsel of Record