UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-24889-GRAHAM/McALILEY

GUSTAVO ABELLA,
        Plaintiff,

v.

TOWN OF MIAMI LAKES, et al.,
        Defendants.
_____/

**DEFENDANT JUAN RODRIGUEZ'S STATEMENT OF MATERIAL FACTS**

Pursuant to Southern District of Florida Local Rule 56.1(a), Defendant Juan Rodriguez files this statement of material facts in support of his forthcoming Motion for Summary Judgment. The facts set forth are introduced as undisputed only for purpose of the Motion for Summary Judgment. An index listing all exhibits is attached as *Exhibit 1*.

## GEOGRAPHY OF THE TOWN OF MIAMI LAKES

1. The Town of Miami Lakes is situated in northwestern Miami-Dade County on both sides of the "big bend" of the Palmetto Expressway, Florida State Route 826. *Geography*, Town of Miami Lakes, attached as *Exhibit 2*; Map of the Town of Miami Lakes, Google Maps, attached as *Exhibit 3*. The Town is bounded on the north by N.W. 170th Street and the Palmetto Expressway, on the south by N.W. 138th Street and Interstate 75, on the west by Interstate 75, and on the east by N.W. 77th Court (for the portion of the Town west of the Palmetto Expressway and north of N.W. 162nd Street) and N.W. 57th Avenue (for the remainder). *See id.* The Town is approximately 6.8 square miles in area, and is bisected by the Palmetto Expressway into eastern and western portions. *See id.*

2. There is only one east-west thoroughfare through the Town: Miami Lakes Drive, which runs from N.W. 89th Avenue to N.W. 57th Avenue. *See* Town of Miami Lakes, Transportation Master Plan 12-13 (2004), attached as *Exhibit 4*; Deposition of Gustavo Abella, Aug. 14, 2019 ("Abella Dep."), at 225:14-16, attached as *Exhibit 5*.

3. Miami Lakes Drive is one of the busiest streets in Miami Lakes. Abella Dep. 225:10-13.

4. The Town of Miami Lakes has designated Miami Lakes Drive, Miami Lakeway, Red Road/N.W. 57th Avenue, Ludlam Road/N.W. 67th Avenue, the Palmetto Expressway, and Interstate 75 "major thoroughfares." Transportation Master Plan, *supra*, at 12-13.

## THE PARTIES

5. Gustavo Abella has lived at 7400 Miami Lakes Drive, Apt. D108, for over eighteen years. Pl.'s Resp. to Interrogs. App. A at 3, attached as *Exhibit 6*; Abella Dep. 13:18-22.

6. He works as a driving instructor and owns a business called Orange Driving School. Abella Dep. 18:2-19:10. Often when Abella provides driving instruction, the student drives his car. *Id.* at 328:22-329:1.

7. The Town of Miami Lakes does not have its own police department. Pursuant to an agreement with the County, the Town is served by officers of the Miami-Dade Police Department (MDPD). *See* Interlocal Agreement Between Miami-Dade County and Town of Miami Lakes for Local Police Patrol Services arts. X, XI, XII (Mar. 4, 2014), attached as *Exhibit 7*.

8. Juan Rodriguez has been an MDPD officer since 1997. Deposition of Juan Rodriguez,

Sept. 11, 2019, at 33:7-10, attached as *Exhibit 8*. He has been assigned as the Community Service Officer for the Town of Miami Lakes since 2005 or 2006. *Id.* at 5:5-6, 5:14-18.

9. Fewer than fifty officers are assigned to the Miami Lakes district. Rodriguez Dep. 6:7-9.

10. Officer Rodriguez does not receive direct orders from officials of the Town of Miami Lakes, only from his major or sergeant. Rodriguez Dep. 31:3-9.

11. Officer Rodriguez resides in Hialeah, south of western Miami Lakes. Declaration of Juan Rodriguez ¶ 4, attached as *Exhibit 9*.

12. Officer Rodriguez's typical daily driving takes him on Miami Lakes Drive past Abella's residence at least four times (between 8:30 and 9:00 a.m., at 1:00 p.m., at 3:20 p.m., and at 4:15 p.m. or 5:15 p.m.) and sometimes more depending on his duties. Rodriguez Decl. ¶¶ 5-23.

### ABELLA'S PRIOR FEDERAL LAWSUIT AGAINST OFFICER RODRIGUEZ

13. In 2011, Abella sued Officer Rodriguez, along with other defendants, in the Southern District of Florida in the case captioned *Abella v. Simon* (and later *Abella v. Rodriguez*), No. 11-cv-20152-CMA. *See Abella v. Simon* Docket Sheet, attached as *Exhibit 10*.

14. In that action, Abella claimed that in February 2007 Officer Rodriguez ordered him to remove a political sign he'd attached to his truck and threatened to issue a citation if he did not remove the sign. *See Abella v. Rodriguez* Fourth Am. Compl. ¶¶ 13-17, attached as *Exhibit 11*; Deposition of Gustavo Abella, June 10, 2014 ("Abella 2014 Dep."), at 132:5-137:6, 143:13-14, attached as *Exhibit 12*. Abella's wife was also present. Deposition of Miriam Abella, June 3, 2014 ("Miriam 2014 Dep."), at 58:23-59:16, attached as *Exhibit 13*.

15. At that time, Officer Rodriguez mistakenly believed that it was a violation of Florida Statute to have a sign blocking the back window of a vehicle. Abella 2014 Dep. 135:11-14; Rodriguez Decl. ¶ 24. Abella did not remove the sign. Abella 2014 Dep. 137:7-8.

16. Officer Rodriguez told Abella in a follow-up conversation that same day that he did not have to take the sign down. Abella 2014 Dep. 140:4-7, 150:6-151:2. He also called Abella's wife three or four times to tell her that they could keep the sign up. Miriam 2014 Dep. 61:10-20.

17. The litigation settled on June 20, 2014, without admission of liability, and the parties stipulated to dismissing the case with prejudice. Settlement Agreement, attached as *Exhibit 14*; Stipulation of Dismissal With Prejudice, attached as *Exhibit 15*.

### ENCOUNTERS BETWEEN ABELLA AND OFFICER RODRIGUEZ

18. During every Encounter between Abella and Officer Rodriguez, Officer Rodriguez was acting in the course and scope of his duties as a Miami-Dade Police Officer assigned to the Town of Miami Lakes, under his authority as a public employee. Am. Compl. [ECF No. 26] ¶¶ 9, 13, 65.

19. Abella alleges that four Encounters took place on May 17, 2016: at 3:30 p.m. ("First Encounter"), 5:00 p.m. ("Second Encounter"), 5:25 p.m. ("Third Encounter"), and 6:50 p.m. ("Fourth Encounter"). Pl.'s Resp. to Interrogs. App. A at 1.

20. In its Order granting in part and denying in part Officer Rodriguez's Partial Motion to Dismiss the Amended Complaint, entered on April 29, 2019 [ECF No. 59], this Court limited the other Encounters at issue to those which took place on the following specific dates: June 8, 2016 ("Fifth Encounter"); June 29, 2016 ("Sixth Encounter"); September 13, 2016 ("Seventh Encounter"); September 15, 2016 ("Eighth Encounter"); sometime between September and October 2016 ("Ninth Encounter"); December 6, 2016 ("Tenth Encounter"); January 10, 2018 ("Eleventh Encounter"); January 11, 2018 ("Twelfth Encounter"); February 6, 2018 ("Thirteenth Encounter"); March 1, 2018 ("Fourteenth Encounter"); March 7, 2018 ("Fifteenth Encounter"); and October 4, 2018 ("Sixteenth Encounter"). *See* Order [ECF No. 59] at 9, 12-13.

21. In seven of the Encounters (the First, Fifth, Seventh, Eighth, Twelfth, Fourteenth, and Sixteenth), Abella alleges that Officer Rodriguez did nothing more than follow him or drive in the lane next to him on Miami Lakes Drive, Miami Lakeway South, N.W. 57th Avenue, N.W. 67th Avenue, and/or the Palmetto Expressway. *See* Pl.'s Resp. to Interrogs. App. A at 1-2, 4-5, 9-10, 13; *see also* Abella Dep. 223:6-232:24 (describing the First Encounter); *id.* at 269:4-275:5 (Fifth); *id.* at 279:6-281:18 (Seventh); *id.* at 281:22-289:20 (Eighth), *id.* at 305:19-307:10 (Twelfth), *id.* at 320:15-321:4 (Fourteenth), *id.* at 333:7-337:17 (Sixteenth). Abella took a cell phone video of portions of some of these Encounters and a photo of one. *See* Video 20160608_140003 (Fifth) (conventionally filed); Video 20160915_144441 (Eigghth) (conventionally filed); Videos 20181004_202553 & 20181004_202705 (Sixteenth) (conventionally filed); *see also* Composite Encounter Photos Taken by Plaintiff ("Pl.'s Photos") at 12 (Sixteenth Encounter), attached as **Exhibit 16**.

22. In the Second Encounter, Abella was sitting in his car across the street from his residence, parked in front of the fence surrounding a closed-down gas station on Miami Lakes Drive, displaying a political sign on the back of his car that read, "TOWN OF MIAMI LAKES" "MGR. ALEX REY IS CORRUPT" "YouTube: JUSTICE4MENU". Abella Dep. 233:21-234:14; Pl.'s Resp. to Interrogs. App. A at 1; Pl.'s Photos, *supra*, at 1-2. Abella oriented his car toward oncoming traffic so that drivers would see the sign. Abella Dep. 234:15-235:2.

23. Abella alleges that Officer Rodriguez drove by him with his window down and, without stopping, he (1) told Abella to remove the political sign from his car or he would give Abella a citation; and (2) told Abella to "stop complaining about the flyers or [he] will be arrested." Pl.'s Resp. to Interrogs. App. A at 1; Abella Dep. 235:10-22, 238:10-22, 239:3-7. Abella said nothing in

response to either statement. Abella Dep. at 237:24-25, 239:9-12. After he made the statements, Officer Rodriguez immediately left. *Id.* at 239:1-2, 239:13-14.

24. Abella did not remove the sign from his car or move his car in response to the statements. Abella Dep. 258:4-10.

25. The reference to "flyers" relates to a state court lawsuit Abella and his wife filed in 2008 against several defendants alleging that they participated, to some extent or another, in creating or distributing defamatory flyers about them to the residents of their condominium complex. Abella Dep. 43:5-21. All but one defendant was dismissed before trial; in 2013, the Abellas went to trial against the only remaining defendant and lost. *Id.* at 135:1-22. The defendants obtained judgments against the Abellas for attorney's fees, and the Abellas owe approximately $160,000 in fees. *Id.* 132:17-24; 357:1-358:11. The Abellas never named Officer Rodriguez as a defendant in that lawsuit. Abella Dep. at 82:15-20.

26. In the Third Encounter, Officer Ronald Perez came to Abella's car window and told him that he needed to move his car because a portion of his bumper was blocking the sidewalk. Abella Dep. 239:16-246:18. Abella took a cell phone video of a portion of this Encounter. *See* Video 20160517_172436 (conventionally filed). Officer Perez did not say anything about Abella's sign. Abella Dep. 242:8-10, 244:24-245:5.

27. Less than a minute later, Abella took a cell phone video of three MDPD patrol cars in the parking lot outside the bank nearby. *See* Video 20160517_172515 (conventionally filed); Abella Dep. 247:22-248:16. Abella later moved his car. *Id.* at 247:3-12.

28. Officer Rodriguez did not direct Officer Perez to tell Abella to move his car. Rodriguez Decl. ¶ 31. Abella has no evidence showing that Officer Rodriguez directed Officer Perez to tell him to move his car. Abella Dep. 245:6-246:16.

29. The only evidence Abella has to support his claim that one of the patrol cars in the video belongs to Officer Rodriguez st that one of the cars has a black "marking" by the front, which he says is not common on most MDPD patrol cars. Abella Dep. 250:1-250:25.

30. In actuality, that "marking" is a decorative vent, which Officer Rodriguez personally has seen on at least a dozen MDPD patrol cars assigned to the Town of Miami Lakes. Rodriguez Decl. ¶ 31 & Ex. C. Abella admits that other MDPD patrol cars assigned to the Town of Miami Lakes have that same "marking." Abella Dep. 250:17-23.

31. Abella does not have personal knowledge why any officer other than Officer Perez was in that parking lot at that time. *See* Abella Dep. 250:12-255:17.

32. In the Fourth Encounter, Abella alleges that after he had parked at the McDonald's

across the street from his condominium complex and gotten out of his car, Officer Rodriguez drove by him and told him (1) he would give him a ticket if he didn't remove the sign, and (2) he would have him arrested. Pl.'s Resp. to Interrogs. App. A at 1; Abella Dep. 255:23-258:2.

33. Abella alleges that as he reached for his cell phone, Officer Rodriguez "stepped on it," sped away from him, circled the McDonald's building, and exited the parking lot onto Miami Lakes Drive. *Id.* at 258:2-3, 259:9-13, 261:10-262:5. Abella took four photos of Officer Rodriguez's patrol car leaving the McDonald's parking lot. *See* Pl.'s Photos, *supra*, at 1-4.

34. Abella did not remove the sign in response to this Encounter. *See generally* Abella Dep. 255:23-264:24.

35. In the Sixth Encounter, Abella alleges that Officer Rodriguez did nothing more than accelerate into and block the intersection of Miami Lakes Drive and the exit to his condominium complex, preventing him from turning left for around five minutes. Pl.'s Resp. to Interrogs. App. A at 3; Abella Dep. 276:6-278:20. Abella took one photo of this Encounter. *See* Pl.'s Photos, *supra*, at 5. The street in the background of the photo is Fairway Drive. Rodriguez Decl. ¶ 32.

36. In two Encounters (the Ninth and the Eleventh), Abella alleges that Officer Rodriguez did nothing more than follow him and make hand gestures. Pl.'s Resp. to Interrogs. App. A at 6 & Abella Dep. 292:14-296:15 (Ninth Encounter); Pl.'s Resp. to Interrogs. App. A at 8 & Abella Dep. 300:6-305:3 (Eleventh Encounter). Abella could not tell what hand gestures Officer Rodriguez made in the Ninth Encounter. Abella Dep. 292:14-19, 295:24-4. He has not stated what hand gestures he saw Officer Rodriguez make during the Eleventh Encounter. *See generally id.* at 300:6-305:3; Pl.'s Resp. to Interrogs. App. A at 8.

37. In the Tenth Encounter, Abella alleges that Officer Rodriguez did nothing more than follow him or drive near him and perhaps shout the word "hey." Pl.'s Resp. to Interrogs. App. A at 7; Abella Dep. 298:17-299:17. Abella took a cell phone video of a portion of this Encounter. *See* Video 20161206_141036 (conventionally filed).

38. In the Thirteenth Encounter, Abella alleges that Officer Rodriguez did nothing more than follow or drive near his car on Miami Lakes Drive and Miami Lakeway South, drive in front of his car while he was at a bank drive-through ATM, circle through a shopping center parking lot, and leave via an exit at the other side of the lot. Pl.'s Resp. to Interrogs. App. A at 10; Abella Dep. 308:2-320:4. Abella took a cell phone video of a portion of this Encounter. *See* Video 20180206_090240 (conventionally filed).

39. In the Fifteenth Encounter, Abella alleges that Officer Rodriguez (1) followed him or drove near him on Miami Lakes Drive, and (2) held up his body-worn camera (BWC) pointed

6

toward Abella's car while Abella's daughter was driving and Abella was in the passenger seat. *See* Abella Dep. 321:10-330:7. Abella took several photos over the course of this Encounter. *See* Pl.'s Photos, *supra*, at 6-11.

40. Abella also alleges that Officer Rodriguez raised his middle finger at Abella and his daughter during this Encounter. Abella Dep. 330:11-332:24. Abella's daughter, the driver of the car and the only identified non-party witness to this Encounter, testified that he did not. Deposition of Victoria Abella, Sept. 18, 2019, at 60:15-21, attached as ***Exhibit 17***. None of the photos show Officer Rodriguez raising his middle finger. *See* Pl.'s Photos, *supra*, at 6-11; Declaration of Sergeant Guillermo Delgado ¶ 16 & Ex. C at 2, attached as ***Exhibit 18***.

41. Officer Rodriguez later reported to his supervisor that he was driving in traffic at that time when he noticed Abella in the vehicle next to him recording him on his cell phone. He advised that because Abella has a history of filming him while attempting to provoke him, he pointed his BWC at Abella and prepared to begin recording the encounter. But then traffic started to flow, so he ultimately did not record anything. Delgado Decl. Ex. C at 1.

42. At the time, Officer Rodriguez thought the driver was a driving student of Abella's. Rodriguez Dep. 91:6-14; Def.'s Resp. to Initial Interrogs. 1-2, attached as ***Exhibit 19***.

43. On the date of the Sixteenth Encounter, October 4, 2018, the Town of Miami Lakes held a public Planning and Zoning Board Meeting at 6:30 p.m. in Town Hall. *See* Agenda, Planning and Zoning Board Meeting (Oct. 4, 2018), attached as ***Exhibit 20***. Officer Rodriguez's duties include serving as sergeant-at-arms for all Town meetings. Rodriguez Decl. ¶ 21.

44. Officer Rodriguez has never arrested Abella. Rodriguez Decl. ¶ 34. Although Officer Rodriguez issued parking tickets to Abella in April 2007 and February 2009, both of which were upheld when challenged in court, he has not since issued another ticket or citation to Abella. Abella 2014 Dep. 217:10-219:12, 292:5-301:21; Rodriguez Decl. ¶ 35.

### COMPLAINTS TO THE MDPD PROFESSIONAL COMPLIANCE BUREAU ABOUT OFFICER RODRIGUEZ

45. On February 12, 2016 at 9:38 a.m., Abella's wife sent an email to the MDPD Professional Compliance Bureau (PCB) and others alleging harassment by Officer Rodriguez. *See* Declaration of Lieutenant Yosvany Sosa ¶ 13 & Ex. A at 2, 4, attached as ***Exhibit 21***. The email does not contain a specific time, date, location, or circumstances of any alleged harassment. *Id.*

46. She was contacted by then-Sergeant Yosvany Sosa, an investigator with the Internal Affairs Section of the MDPD Professional Compliance Bureau (PCB). Sosa Decl. ¶¶ 1, 14.

47. Mrs. Abella advised that neither she nor her husband would elaborate on the incidents

she alleged in her email and did not want to be contacted regarding the email. *Id.* ¶ 14.

48. Because Mrs. Abella refused to provide details about any alleged encounter, Sergeant Sosa prepared a Contact Report for informational purposes only. *Id.* ¶ 16. An Internal Affairs investigator prepares a Contact Report for informational purposes only where he or she determines that a complaint (1) does not allege a violation of law or department rules, (2) provides no details, (3) is frivolous, or (4) repeats a complaint that has already been addressed by the PCB but provides no new information. *Id.* ¶ 10.

49. Once the determination to memorialize Mrs. Abella's complaint in a Contact Report for informational purposes only was made and approved by the chain of command, no further action by the PCB was needed or taken. *Id.* ¶¶ 6-7, 11, 17-18.

50. At the time of any Encounter, Officer Rodriguez had no knowledge that this Contact Report was written or the underlying complaint was filed with the PCB. Rodriguez Decl. ¶ 27-29; Rodriguez Dep. 40:5-18; Def.'s Resp. to Second Set of Interrogs. 3-4, 5, 6, attached as ***Exhibit 22***.

51. At the time of any Encounter, Sergeant Sosa had not told Officer Rodriguez that this Contact Reports for informational purposes only was written or that the underlying complaints were filed with the PCB. Sosa Decl. ¶ 19-20.

52. Between April 30, 2016, and September 24, 2018, the PCB received at least thirty emails sent by Abella directly to the PCB or emails sent to others that were later forwarded to the PCB, all but two of which contained complaints about or accusations against Officer Rodriguez. *See* Delgado Decl. ¶¶ 13, 18, Ex. A at 4-12, 23-45; Declaration of Sergeant Jorge Audino ¶ 13 & Ex. A at 3-7, attached as ***Exhibit 23***; Declaration of Sergeant Robert Eichler ¶¶ 13, 23, Ex. A at 3-5, Ex. B at 3-8, attached as ***Exhibit 24***; Declaration of Sergeant Mario Ferguson ¶ 13 & Ex. A at 3-5, attached as ***Exhibit 25***; Declaration of Sergeant William Houston ¶ 13 & Ex. A at 3-5, attached as ***Exhibit 26***; Declaration of Lieutenant Tonua Johnson ¶ 13 & Ex. A at 3-14, attached as ***Exhibit 27***; Declaration of Sergeant Kent C. Jurney, Jr. ¶ 20 & Ex. D at 4-26, attached as ***Exhibit 28***; Declaration of Sergeant Orlando Lopez ¶ 13 & Ex. A at 4-9, attached as ***Exhibit 29***; Declaration of Sergeant Eric Riggenbach ¶ 13 & Ex. A at 3-8, attached as ***Exhibit 30***; Declaration of Sergeant Richard Trujillo ¶ 22 & Ex. B at 4-7, attached as ***Exhibit 31***; Declaration of Sergeant Michael W. Watson, Jr. ¶ 13 & Ex. A at 4-6, attached as ***Exhibit 32***; Declaration of Lieutenant Vernon Williams ¶ 13 & Ex. A at 4-9, attached as ***Exhibit 33***.

53. Of those twenty-eight complaint emails, twenty-six contained no allegations or information about any specific encounter between Abella and Officer Rodriguez taking place after 2008. *See* Audino Decl. ¶ 13 & Ex. A at 5; Delgado Decl. ¶¶ 13, 18, Ex. A at 4-12, 23-45; Eichler

Decl. ¶¶ 13, 23, Ex. A at 3-5, Ex. B at 3-8; Ferguson Decl. ¶ 13 & Ex. A at 3-5; Houston Decl. ¶ 13 & Ex. A at 3-5; Johnson Decl. ¶ 13 & Ex. A at 3-14; Jurney Decl. ¶ 20 & Ex. D at 4-26; Lopez Decl. ¶ 13 & Ex. A at 4-9; Riggenbach Decl. ¶ 13 & Ex. A at 3-8; Trujillo Decl. ¶ 22 & Ex. B at 4-7; Watson Decl. ¶ 13 & Ex. A at 4-6; Williams Decl. ¶ 13 & Ex. A at 4-9. The other two emails contained photos from the Fifteenth Encounter. *See* Delgado Decl. Ex. A at 9-12, 34-36.

54. Between April 30, 2016, and September 24, 2018, Abella had sixteen conversations with Internal Affairs investigators about his complaints against Officer Rodriguez, either telephonically or when he reported in person to the PCB office to file or discuss a complaint. *See* Audino Decl. ¶ 15; Delgado Decl. ¶ 15; Eichler Decl. ¶ 15; Houston Decl. ¶ 15; Johnson Decl. ¶ 15; Jurney Decl. ¶ 13, 22; Lopez Decl. ¶ 15; Riggenbach Decl. ¶ 14; Trujillo Decl. ¶¶ 13, 23-24; Watson Decl. ¶¶ 15-17; Williams Decl. ¶ 15.

55. Of those sixteen conversations, fourteen resulted in a determination by the assigned investigator that Abella was raising a repeat complaint about Officer Rodriguez that had already been addressed by the PCB—a determination which, once approved by the chain of command, required no further action except preparing a Contact Report for informational purposes only. *See* Audino Decl. ¶¶ 10, 17-19; Eichler Decl. ¶¶ 10, 17-19, 26-28; Ferguson Decl. ¶¶ 10, 16-18; Houston Decl. ¶¶ 10, 16-18; Johnson Decl. ¶¶ 10, 17-29; Jurney Decl. ¶¶ 10, 24-26; Lopez Decl. ¶¶ 10, 17-19; Riggenbach ¶¶ 10, 15-17; Trujillo Decl. ¶¶ 10, 16-18, 27-29; Watson Decl. ¶¶ 10, 19-21; Williams Decl. ¶¶ 10, 16-18.

56. At the time of any Encounter, Officer Rodriguez had no knowledge that any of these fourteen Contact Reports for informational purposes only were written or that the underlying complaints were filed with the PCB. Rodriguez Decl. ¶¶ 27-29; Rodriguez Dep. 40:5-18; Def.'s Resp. to Initial Interrogs. 2; Def.'s Resp. to Second Set of Interrogs. 3-4, 5, 6. The fact of the Contact Reports would have been noted in Officer Rodriguez's Employee Profile. *E.g.*, Sosa Decl. ¶ 10. However, Officer Rodriguez did not view or access his Employee Profile in 2016, 2017, or 2018. Rodriguez Decl. ¶ 30.

57. At the time of any Encounter, none of the Internal Affairs investigators had told Officer Rodriguez that they had prepared a Contact Report for informational purposes only or that the underlying complaints were filed with the PCB. Audino Decl. ¶¶ 10, 20-21; Eichler Decl. ¶¶ 10, 20-21, 29-30; Ferguson Decl. ¶¶ 10, 19-20; Houston Decl. ¶¶ 10, 19-20; Johnson Decl. ¶¶ 10, 20-21; Jurney Decl. ¶¶ 10, 27-28; Lopez Decl. ¶¶ 10, 20-21; Riggenbach Decl. ¶¶ 10, 18-19; Trujillo Decl. ¶¶ 10, 19-20, 30-31; Watson Decl. ¶¶ 10, 22-23; Williams Decl. ¶¶ 10, 19-20.

58. Before this lawsuit commenced, Officer Rodriguez had knowledge of only two com-

plaints Abella had filed with the PCB. Rodriguez Decl. ¶ 27. On October 20, 2016, he was interviewed by Lieutenant Christopher Wallace regarding a complaint that he approached Abella on a bicycle and said "money" while he was providing driving instructions. Jurney Decl. ¶ 13 & Ex. C at 1; Def.'s Resp. to Second Set of Interrogs. 3. On March 21, 2018, he was interviewed by Acting Lieutenant George Soto regarding the Fifteenth Encounter. Delgado Decl. Ex. C. at 1; Def.'s Resp. to Second Set of Interrogs. 4; Def.'s Resp. to Initial Set of Interrogs. 2.

### COMPLAINTS TO OTHER OFFICIALS ABOUT OFFICER RODRIGUEZ

59. On January 28, 2015, Abella filed a complaint against Officer Rodriguez with the Florida Commission on Ethics. Rodriguez Decl. ¶ 25 & Ex. A. That complaint was dismissed. *Id.*; Rodriguez Dep. 98:2-5.

60. On at least one occasion, Abella copied Officer Rodriguez on an email he sent to numerous people and entities, including the Department of Justice, the FBI, congresspeople, and senators making allegations of conspiracy, corruption, and "targeting" against Officer Rodriguez. Rodriguez Dep. 107:4-19; *see also* Email from Gus Abella to Norman Hemming et al. (Apr. 17, 2016, 10:35 p.m.), attached as **Exhibit 34**. Officer Rodriguez "feel[s] bad" when he reads emails containing thse accusations "[b]ecause they are not true." Rodriguez Dep. 105:13-107:4.

61. In 2016, Abella went to the office of Congressman Mario Diaz-Balart to complain about Officer Rodriguez and others. Pl.'s Resp. to Interrogs. App. B ¶ 11. That August, he received a letter from the Congressman relaying a response from the Department of Justice recommending that if Abella had evidence of a violation of federal criminal law, he should provide it to the FBI. *Id.* Abella later spoke to an agent at the FBI's Miami Field Office. *Id.*

62. Abella claims that on October 5, 2016, he spoke to Miami-Dade County Mayor Carlos Gimenez and requested he investigate Officer Rodriguez. Pl.'s Resp. to Interrogs. App. B ¶ 2.

63. On January 25, 2018, Abella went to U.S. Senator Marco Rubio's office in Doral to file a complaint against Officer Rodriguez. Pl.'s Resp. to Interrogs. App. B ¶ 6. He received a letter from Senator Rubio dated May 21, 2018, stating that he had forwarded Abella's correspondence to the Department of Justice on February 8, 2018, which subsequently referred it to the FBI. *Id.* The letter also states that the FBI's records show that their Miami Field Office reviewed Abella's complaint and did not find any violation. *Id.*

64. At the time of any Encounter, Officer Rodriguez had no knowledge that the complaints to the Congressman, the Mayor, or the Senator were made. Rodriguez Decl. ¶ 30.

65. No complaint Abella has ever filed against a public official or employee has been sustained. Abella Dep. 397:12-400:13.

66. Abella believes that Officer Rodriguez should avoid driving near him; if Officer Rodriguez sees Abella's car, he should "go a different way." Abella Dep. 231:9-232:24.

### ABELLA'S ALLEGATIONS OF CONSPIRACY

67. Abella believes he is the victim of a conspiracy. Abella Dep. 206:21-207:14; *see also id.* 98:21-105:9, 106:6-108:4, 108:21-134:22, 137:23-139:22, 142:6-153:25.

68. He claims that the people involved in the conspiracy are Officer Rodriguez; former Town of Miami Lakes Councilwoman Nancy Simon; former Miami Lakes Town Manager Alex Rey; former president of Abella's condominium association Thomas Calvey; former Miami-Dade Commission on Ethics investigator Kennedy Rosario; former Miami-Dade County Commissioner Natacha Seijas; former MDPD Major Frank Bocanegra; former Miami Lakes Mayor Michael Pizzi; and former Miami Lakes Officers Benjamin Rivera and Richard Baez. Abella Dep. 207:18-213:22.

69. According to Abella, all of these individuals are involved in the conspiracy because Nancy Simon was investigated for, found guilty of, and fined and reprimanded for selling real estate without a license as a result of him voicing his opinion in a 2007 Town Meeting regarding a sign ordinance. Abella Dep. 214:24-221:19.

70. Abella claims to have been called by an anonymous person who told him to "keep going forward," because his "complaint sooner or later was going to break the camel's back on the corruption within Miami-Dade police." Abella Dep. 142:24-144:14. He claims to have been told by the wife of a Golden Beach police officer that MDPD officials were "obstructing" and "burying" his complaints. *Id.* at 144:22-145:24. And he claims that an unidentified MDPD detective came to his house at an unknown time and "shared a lot of information" but said that if she was taken to court she would deny everything she said. *Id.* at 146:25-148:17.

71. Officer Rodriguez has never participated in a conspiracy to take any adverse action against Abella. Rodriguez Decl. ¶ 36. He has no knowledge of the existence of any conspiracy to take any adverse action against Abella. *Id.* ¶ 37.

72. Officer Rodriguez was never ordered or directed by Nancy Simon to take any adverse action against Abella. Rodriguez Decl. ¶ 38. He has no knowledge whether Nancy Simon told any of his supervisors to order him to take any adverse action against Abella. *Id.* ¶ 39.

73. Officer Rodriguez was never ordered or directed by any Town employee, council member, manager, vice mayor, or mayor to take any adverse action against Abella. Rodriguez Decl. ¶ 40. He has no knowledge whether any Town employee, council member, manager, vice mayor, or mayor told any of his supervisors to order him to take any adverse action against Abella. *Id.* ¶ 41.

Dated: September 27, 2019.

Respectfully submitted,

ABIGAIL PRICE-WILLIAMS
MIAMI-DADE COUNTY ATTORNEY

By:   /s/ Zach Vosseler
      Zach Vosseler
      Florida Bar No. 1008856
      zach@miamidade.gov
      Bernard Pastor
      Florida Bar No. 46582
      pastor@miamidade.gov
      Assistant County Attorneys

      Stephen P. Clark Center
      111 N.W. First Street, Suite 2810
      Miami, Florida 33128
      (305) 375-5151

*Counsel for Defendant Juan Rodriguez*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 27, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true and correct copy of the foregoing was served this day on all counsel of record via CM/ECF.

      /s/ Zach Vosseler
      Zach Vosseler
      Assistant County Attorney