UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 18-cv-24889-DLG**

GUSTAVO ABELLA,

    Plaintiff,

v.

TOWN OF MIAMI LAKES, et al.,

    Defendant.

_____

**Plaintiff Gustavo Abella's Statement of Material Facts
In Opposition To Defendant Juan Rodriguez's
Motion for Summary Judgment**

Plaintiff Gustavo Abella hereby responds to Defendant Juan Rodriguez's Statement of Material Facts (ECF No. 106) submitted in support of his concurrently filed Motion for Summary Judgment (ECF No. 107). Pursuant to S.D. Fla. Local Rule 56.1(a), the following maintains the heading structure and numbering sequence found within Defendant's Statement of Material Facts.

## GEOGRAPHY OF THE TOWN OF MIAMI LAKES

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.

## THE PARTIES

5. Undisputed.
6. Undisputed.
7. Undisputed.
8. Undisputed.
9. Undisputed.
10. Undisputed.
11. Undisputed.
12. Undisputed that Rodriguez drives past Abella's residence multiple times on a near-daily basis. Disputed that this he is required to do so four or more times per day in performance of his daily duties. Def. Ex. 8, Deposition of Juan Rodriguez at 9:9-12:4 (describing Rodriguez's daily duties).[1] Every day between approximately 8:30 am and 9:00 am Rodriguez patrols Bob Graham Educational Center (the "BGEC"). Abella lives on the east side of the Palmetto Expressway, approximately a third-of a mile from its northbound entrance. *See* Abella Declaration of Gustavo Abella (the "Abella Dec.") at ¶¶ 15. The BGEC is located at 15901 NW 79th Ave., on the West side of the Palmetto Expressway and approximately *one mile away* from Abella's home. *Id.* In the afternoon, Rodriguez returns to BGEC at approximately 2:00 pm and remains there until approximately 3:15 pm. Rodriguez Dep. at 10:5-9. Rodriguez then proceeds to Miami Lakes Middle from the BGEC. *Id.* at 10:-14. Miami Lakes Middle is located at 5425 Miami Lakeway

---

[1] Exhibits filed by Defendant in support of his Motion for Summary Judgment are designated herein as Def. Ex. XX. Exhibits filed by Plaintiff in support of his Opposition in Response are designated herein as Pl. Ex. XX.

and is approximately 1.3 to 1.5 miles from Abella's home. Abella Dec. at ¶ 15. He typically arrives at Miami Lakes Middle at approximately 3:30 pm and leaves from there to go home between 4:00 pm and 4:15 pm. *Id*. No one in Rodriguez's chain of command instructs him on the routes he must travel on patrol. Rodrigues Dep. at 12:13-14. Accordingly, it is Rodriguez and Rodriguez alone that chooses to drive by Abella's home multiple times per day.

### ABELLA'S PRIOR FEDERAL LAWSUIT AGAINST OFFICER RODRIGUEZ

13. Undisputed.

14. Undisputed.

15. Undisputed that Rodriguez had no basis in law to order Abella to remove the sign from his vehicle. Disputed that Rodriguez's order was the result of a mistake, as Rodriguez has conceded both to Abella personally and under oath in an unrelated proceeding that he was ordered to have Abella remove the sign from his vehicle. *See* Abella Dec. at ¶ 32.

16. Undisputed.

17. Undisputed.

### ENCOUNTERS BETWEEN ABELLA AND OFFICER RODRIGUEZ

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Disputed. First, Abella claims that each of the Encounters described in the First Amended Complaint between he and Abella constitute retaliatory violations of Abella's First Amendment rights stemming from Abella's exercise of his rights to free speech and to petition his government for redress of his grievances. *See* First Amended Complaint; *see also* Pl. Response to Interrogatories. Second, Defendant's description of these violations omits key facts relevant to Abella's claim under § 1983. Abella claims that in the First Encounter[2] Rodriguez "appeared outside [his] residence and followed [him] as he was existing his Condominium Complex." *See* Pl.'s Resp. to Interrogs., App. A at 1-2, 4-5, 9, 11 13. At the time, Abella was displaying a political sign on his vehicle that read "Town of Miami Lakes TOWN MANAGER ALEX REY is Corrupt. YouTUBE: Justice4MEnU." *Id*. Abella claims that in the Fifth Encounter, Rodriguez followed

---

[2] Plaintiff adopts the naming convention in Defendant Juan Rodriguez's Statement of Material Facts (ECF No. 106) at ¶¶ 19-20 for the individual First Amendment violations committed by Rodriguez against Abella.

him in his police vehicle and prevented him from returning home. *Id*. Abella claims that in the Seventh Encounter, Rodriguez again appeared outside of Abella's condominium and followed him all the way to his bank. *Id.* Rodriguez trailed Abella for between 5 and 8 minutes. *Id*. During the Eighth Encounter, Abella observed Rodriguez following him along Miami Lakes Drive for approximately seven minutes. *Id*. Similarly, Abella claims that during the Twelfth Encounter, Rodriguez followed Abella in his patrol car from the time he left his condominium complex until he exited Miami Lakes. *Id*. In the Fourteenth Encounter, Rodriguez followed Abella until Abella pulled into his home. *Id*. And in the Sixteenth Encounter, Rodriguez followed Abella for approximately two minutes beginning from the time he left his condominium complex.

Undisputed Abella has videos and photographs of portions of several of these Encounters. These videos and photos will be conventionally filed as Exhibits Video 1 through Video 16 and Photo 1 through Photo 35. *See* Motion to Conventionally File Video and Photographic Exhibits (ECF No. 109)

22. Undisputed.

23. Undisputed that Rodriguez threatened to cite and arrest Abella for displaying this sign and left the scene after making these threats.

24. Disputed. Abella eventually removed his sign as a result of Rodriguez's threats. Abella Dec. at ¶ 50.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Disputed. In addition to the decorative vent, Abella saw Rodriguez at the scene. Abella Dep. at 253:5-10.

30. Undisputed that the "black marking" is a decorative vent displayed on several patrol cars within Miami Lakes. Disputed that "at least a dozen MDPD patrol cars assigned to the Town of Miami Lakes" have such a vent. *See* Rodriguez Dec. at Ex. C (providing photographs of only 8 such vehicles).

31. Undisputed.

32. Undisputed.

33. Undisputed.

4845-2451-9081

34. Disputed. Abella eventually removed his sign as a result of Rodriguez's threats. Abella Dec. at ¶ 50.

35. Undisputed.

36. Undisputed that Abella alleges that Rodriguez followed made rude hand gestures directed to him during the Ninth and Eleventh Encounters. Undisputed that Abella cannot recall at this time the exact hand gestures directed to him during this specific encounter; Abella is sure, however, that it was either a closed first, middle finger, or "finger-guns." *See* Abella Dec. at ¶ 52. Disputed that Rodriguez "did nothing more" than these actions. Abella claims that these actions were part of Rodriguez's pattern and practice of retaliating against and harassing him for exercising his First Amendment rights. *See* First Amended Complaint; Pl.'s Resp. to Interrogs.

37. Disputed. Abella claims that during the Tenth Encounter, Rodriguez weaved in and out of traffic to catch up to Abella as both were traveling along Miami Lakes Drive while shouting at Abella from his police vehicle. The reckless manner in which Rodriguez was driving nearly resulted in an automobile accident as he was not paying attention while yelling at Abella and thus had to stop suddenly at 77th Court. *See* Pl.'s Resp. to Interrogs., App. A at 7; *see also* Abella Dep. at 297:23-298:14.

38. Disputed. Abella claims that during the Thirteenth Encounter, he noticed Rodriguez following him from his Condominium Complex to his bank, approximately 1.5 miles away. *See* Pl.'s Resp. to Interrogs., App. A at 10. Rodriguez then followed Abella into the shopping center where his bank was located, and circled the bank to ensure that Abella could see that he was being followed. *Id*. Once Rodriguez confirmed that Abella had seen him, he left the shopping plaza. The entire encounter lasted approximately 10 minutes.

Undisputed that Abella recorded a brief portion of this encounter through his cell phone.

39. Undisputed.

40. Undisputed that Abella observed Rodriguez extending his middle finger to him. *Id*. Disputed that Abella's daughter testified that this did not occur. *See* Dep. of Victoria Abella 60:15-21. Victoria Abella testified that (1) she did not witness her father take the photograph of Rodriguez holding his body camera, and (2) in the picture she was given to review, it appeared that he was "holding something." *Id*. at 57:12-16; 60:15-21. She further testified that she looked at Rodriguez and then looked away. *Id*. at 60:15-21.

Undisputed that none of the photos display Rodriguez extending his middle finger.

41. Undisputed that this is Rodriguez's self-serving version of events.

42. Undisputed that this is Rodriguez's self-serving version of events.

43. Undisputed.

44. Undisputed.

**COMPLAINTS TO THE MDPD PROFESSIONAL COMPLIANCE BUREAU ABOUT OFFICER RODRIGUEZ**

45. Disputed. Mrs. Abella's email states that "Officer Juan F. Rodriguez . . . has been harassing and intimidating my husband, Gustavo Abella, for the second time this week." *See* Dec. of Yosvany Sosa at Ex. A, p. 4.

46. Undisputed.

47. Undisputed.

48. Undisputed that Ms. Sosa claims that this is the policy of the PCB. Disputed that this is the actual policy of the PCB. *See* Abella Dec. at ¶ 45.

49. Undisputed that no further action by the PCB was taken. Disputed that no further action by PCB was "needed." *See* Abella Dec. at ¶ XX. Mrs. Abella sent this email in February 2016. The incidents involving retaliation and harassment by Rodriguez had been ongoing for nearly 10 years. *See* Abella Dec. at ¶¶ 55-56. Moreover, the MDPD had recently settled claims for near-identical conduct on the part of Rodriguez. *See* Def. Ex. 14, Settlement Agreement, No.11-cv-20152-CMA.

50. Disputed. PCB policy states that when a complaint about an employee of the Miami-Dade Police Department is received, the complaint is "classified and assigned to an investigator of supervisory rank. Statements are taken from the complainant, all witnesses, *and the subject employee(s)*. Upon completion, the case is reviewed and a disposition is made by department command-level supervisors." *See* Abella Dec. at ¶ 45.

51. Undisputed that Sergeant Sosa may not have told Rodriguez about these report. Disputed that Rodriguez had no knowledge of these reports prior to any Encounters as PCB policy was and is to interview the subject employee following the filing of a complaint against said employee prior to any case disposition being made. *See* Abella Dec. at ¶ 45.

52. Undisputed.

53. Disputed. Abella's complaint contain both background information as well as requests to follow up on the current retaliatory conduct of Rodriguez. *See* Abella Dec. at ¶¶ 44.

54. Undisputed.

55. Undisputed that the assigned investigator determined that Abella was raising a repeat complaint about Rodriguez that had already been addressed by the PCB. Disputed that this determination required the PCB to take no further action. Abella Dec. at Ex. 45.

56. Disputed that Rodriguez had no knowledge that these complaints were written or submitted to the PCB as PCB policy was and is to interview the subject employee following the filing of a complaint against said employee prior to any case disposition being made. *See* Abella Dec. at ¶ 45.

57. Disputed. PCB policy was and is to interview the subject employee following the filing of a complaint against said employee prior to any case disposition being made. *See* Abella Dec. at ¶ 45.

58. Undisputed that Rodriguez had knowledge of at least two complaints made by Abella. Disputed that these are the only two Encounters Rodriguez had knowledge of, as PCB policy was and is to interview the subject employee following the filing of a complaint against said employee prior to any case disposition being made. *See* Abella Dec. at ¶ 45. In addition, Rodriguez was copied on several emails sent directly by Abella. *Id*. at 44.

59. Undisputed.

60. Undisputed that Abella copied Rodriguez on a number of complaints he sent to various governmental authorities and that being faced with such complaints makes Rodriguez "feel bad." Disputed that the accusations are "not true." *See* Abella Dec. at ¶ 53.

61. Undisputed.

62. Undisputed.

63. Undisputed.

64. Undisputed that Rodriguez claims not to have been aware of the complaints made to Congressman Diaz-Balart, Mayor Gimenez, and Senator Rubio.

65. Disputed. Abella's complaints about former Miami Lakes Councilwoman and Vice-Mayor Nancy Simon practicing real estate without a license were confirmed and led to the Florida Department of Business and Professional Regulation filing an administrative complaint against Ms. Simon for operating "as a broker or sales associate without being the holder of a valid and current license." *See* Abella Dec. at ¶¶ 34-35. Ms. Simon ultimately admitted to practicing real estate without a license and entered into a stipulated settlement with the Department of Business

and Professional Regulation whereby she agreed to pay a fine and investigative costs of $2780.50 as well as to cease and desist from any such further unlawful activity. *Id*.

66. Undisputed.

67. Undisputed.

68. Undisputed.

69. Undisputed.

70. Undisputed.

71. Disputed. In 2007, Rodriguez admitted to Abella that he was ordered to force Abella to remove a political sign from his vehicle and later testified to same during an unrelated legal proceeding. *See* Abella Dec. at ¶ 32.

72. Disputed. In 2007, Rodriguez admitted to Abella that he was ordered to force Abella to remove a political sign from his vehicle and later testified to same during an unrelated legal proceeding. *See* Abella Dec. at ¶ 32.

73. Disputed. In 2007, Rodriguez admitted to Abella that he was ordered to force Abella to remove a political sign from his vehicle and later testified to same during an unrelated legal proceeding. *See* Abella Dec. at ¶ 32.

**PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

74. Abella, his wife Miriam, and their daughter Victoria moved to Miami Lakes in 2002. *See* Abella Dec. at ¶ 15. They moved into a condominium off the 7400 block of Miami Lakes Drive and have lived there ever since. *Id*.

75. The Abella's home is approximately 1.6 miles west of the Town of Miami Lakes Police Department, one mile southeast of the Bob Graham Education Center, and 1.4 miles southwest of Miami Lakes Middle School. *Id*.

76. Rodriguez can reach his office at the Town of Miami Lakes Police Department, the Bob Graham Education Center, or Miami Lakes Middle School without driving by Abella's home.

77. Abella and Rodriguez were friendly with each other prior to late 2006, and would frequently discuss topics such as the local news and politics. *See* Abella Dec. at ¶ 18; Rodriguez Dep. at 54:6-8.

78. Abella has been politically active with respect to both local government in Miami Lakes and Miami-Dade County as well as state and national elections going as far back as 2002. *See* Abella Dec. at ¶¶ 19-20.

79. Abella believes that he has an obligation as a citizen to inform his government when elected officials or government employees are abusing their authority, even when such reporting comes at a personal cost to him. *Id*. at ¶ 22.

80. In 2007, Rodriguez ordered Abella to remove a political sign that he had placed in the rear window of his car. *Id*. at ¶ 31. This illegal order, along with a number of other retaliatory actions taken by Rodriguez (and others) in violation of Abella's First Amendment rights, formed the basis of Abella's cause of action against Rodriguez in a previously filed lawsuit, *Abella v. Town of Miami Lakes Councilwoman Nancy Simon*, Case No. 11-20152.

81. In that lawsuit, both District Court Judge Cecilia Altonaga and the Eleventh Circuit Court of Appeals recognized that Abella had a constitutionally protected right to both display such political signs in his vehicle and to register complaints against government officials for unlawful or unethical conduct. *See Abella v. Town of Miami Lakes Councilwoman Nancy Simon*, Case No. 11-20152, 2012 WL 12888572, at *5 (S.D. Fla. Dec. 31, 2012) ("However, the Eleventh Circuit conspicuously left unaffected the Court's holdings that Abella sufficiently alleged he engaged in constitutionally protected speech or acts, and his protected activity was adversely affected."). As Rodriguez was represented by counsel in that lawsuit, he would have received the orders from both the district court and appellate court proceedings and would have been placed on notice of their contents.

82. Following settlement of that lawsuit in 2014, Abella attempted to avoid any trouble with Rodriguez and to stay away from him as much as possible, as well as to refrain from filing any complaints with respect Rodriguez's continuing unlawful conduct. *See* Abella Dec. at ¶ 42.

83. Nevertheless, Rodriguez continued to retaliate against Abella for filing the federal lawsuit. *Id*. at ¶¶ 42-44. Abella again began to file complaints with various government oversight authorities and political leaders. *Id*. Between June 2015 and October 2018, Abella filed approximately 45 complaints regarding Rodriguez's retaliatory conduct. *Id*.

84. Rodriguez continues to retaliate against Abella to this day. *Id*. at ¶¶ 56-58. Indeed, in just the first week of September—two weeks after Abella gave deposition testimony in this lawsuit

critical of Rodriguez—Rodriguez followed Abella in an attempt to intimate and harass him in retaliation for pursuing his legal remedies. *Id*.

Dated: October 11, 2019.                                    Regards,

/s/ Eric S. Boos
Eric S. Boos
eboos@shb.com
Florida Bar No.: 0107673
**SHOOK, HARDY & BACON L.L.P.**
Miami Center, Suite 3200
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305.358.5171

Anne-Solenne Rolland
Florida Bar No. 99631
arolland@leelawfirm.com
**LEE, HERNANDEZ, LANDRUM & CARLSON, APC**
100 Biscayne Boulevard, Suite 605
Miami, Florida 33132
Telephone: 305.377.2323

*Counsel for Plaintiff Gustavo Abella*

4845-2451-9081