# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 29, 2020

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 20-10833-DD
Case Style: Gustavo Abella v. Juan Rodriguez
District Court Docket No: 1:18-cv-24889-DLG

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 20-10833

_____

District Court Docket No.
1:18-cv-24889-DLG

GUSTAVO ABELLA,

                                              Plaintiff - Appellee,

versus

TOWN OF MIAMI LAKES, et al.,

                                              Defendants,

OFFICER JUAN F. RODRIGUEZ,
Individually and Official Capacity,

                                              Defendant - Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: August 31, 2020
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

ISSUED AS MANDATE 09/29/2020

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10833
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-24889-DLG

GUSTAVO ABELLA,

                                                                      Plaintiff-Appellee,

versus

OFFICER JUAN F. RODRIGUEZ,
Individually and Official Capacity,

                                                                      Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 31, 2020)

Before LAGOA, BRASHER, and FAY, Circuit Judges.

PER CURIAM:

      This case is the latest in the ongoing saga between Gustavo Abella and Officer Juan Rodriguez. In another lawsuit between these litigants in 2013, this Court affirmed the district court's denial of Rodriguez's defense of qualified immunity to

Abella's First Amendment retaliation claim. *See Abella v. Simon*, 522 F. App'x 872 (11th Cir. 2013). Now, Abella is back with a new lawsuit against Rodriguez based on more recent, albeit similar, alleged conduct. As he did in 2013, Abella asserts that Rodriguez retaliated against him because of his speech. And, as he did in 2013, Rodriguez argues on appeal that he is entitled to qualified immunity to that claim. Because the law remains clearly established that police officers may not harass or threaten citizens with unlawful arrest for exercising their First Amendment rights, we again affirm the district court's order denying qualified immunity.

## I.

We view the evidence in the light most favorable to Abella, as we must at this posture. *See Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th. Cir. 2016).

Abella and Rodriguez have been embroiled in controversy since at least 2007. Abella resides in the Town of Miami Lakes where Rodriguez serves as a police officer. Abella describes himself as "quite politically active with respect to local Miami Lakes issues." In 2016, Abella began displaying a sign in his car's rear window that read: "Town of Miami Lakes TOWN MANAGER ALEX REY is Corrupt.  You TUBE: Justice 4 MEnU."

Abella asserts that Rodriguez harassed and intimidated him and his family in relation to this sign. He lodged formal and informal complaints with the police department and other local officials about sixteen encounters between May 17, 2016,

2

and October 4, 2018. These encounters include (1) Rodriguez appearing at Abella's home and following him in his police vehicle while Abella displayed a political sign on his truck; (2) Rodriguez driving by Abella and telling him to remove the political sign or he would issue him a citation; (3) Rodriguez telling Abella to remove the sign or he would have Abella arrested; (4) Rodriguez driving next to or following Abella on public roads; (5) Rodriguez's police vehicle blocking an intersection so that Abella could not exit his condominium complex; (6) Rodriguez following Abella in his police vehicle and making unspecified hand gestures while Rodriguez had political signs displayed on his truck; and (7) Rodriguez making unspecified hand gestures toward Abella and his daughter and recording them with his cell phone. Rodriguez has never arrested Abella and has not issued him any citations since 2009.

## II.

Abella filed his initial complaint on November 21, 2013 against the Town of Miami Lakes, former Miami Lakes Mayor Michael Pizzi, Town Manager Alex Rey, Miami Dade County, and Rodriguez. Abella amended that complaint on February 11, 2019. In his First Amended Complaint, Abella alleged that defendants violated 42 U.S.C. § 1983 by, acting under color of law, retaliating against him for exercising his First Amendment rights to display political signs and file grievances against a police officer. The district court granted in part a motion to dismiss as to all

defendants except Rodriguez and partially dismissed Abella's First Amendment retaliation claims against Rodriguez for all but the sixteen encounters previously referenced.

Rodriguez filed a motion for summary judgment based on qualified immunity, which the district court denied. The district court determined that (1) it is undisputed that Rodriguez acted within the scope of his discretionary authority; (2) the law is clearly established that public officials may not retaliate against private citizens for exercising their First Amendment rights; and (3) that Abella presented sufficient evidence to create a genuine issue of fact about whether Rodriguez's conduct had adversely affected his protected speech and whether there is a causal connection between Rodriguez's acts and Abella's protected speech. Rodriguez now appeals that order.

## III.

We review the district court's denial of summary judgment based on qualified immunity *de novo* and view the evidence in the light most favorable to Abella as the nonmoving party. *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015) (citing *Kesinger ex re. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## IV.

Government officials are entitled to qualified immunity for their actions in performing discretionary functions unless the plaintiff can establish "(1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were clearly established in light of the specific context of the case, not as a broad general proposition." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (cleaned up). It is undisputed that Rodriguez was acting within the scope of his discretionary authority at all times relevant to this case. As to the second element, a plaintiff can show that his rights were clearly established in one of three ways: (1) identifying a "materially similar case" decided before the alleged violation; (2) pointing to "a broader, clearly established principle that should control the novel facts of the situation;" or (3) demonstrating that the conduct at issue "so obviously violates the constitution that prior case law is unnecessary." *Terrell v. Smith*, 668 F.3d 1244, 1255–56 (11th Cir. 2012) (cleaned up).

To succeed on a First Amendment retaliation claim, a plaintiff must establish "that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (citing *Smith v. Mosely*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

Rodriguez erroneously argues that the district court should be reversed because it (1) defined Abella's clearly established rights too generally; and (2) mistakenly found that a genuine issue of material fact exists regarding the causation element of Abella's First Amendment retaliation claim. In response, Abella argues that (1) this Court lacks jurisdiction over Rodriguez's appeal; (2) Rodriguez violated Abella's First Amendment Rights with "obvious clarity;" and (3) the district court properly considered the causation element and found sufficient conflicting facts to send that issue to a jury. As an initial matter, this Court has jurisdiction over Rodriguez's appeal because he raises "a legal question concerning a clearly established federal right that can be decided apart from considering sufficiency of the evidence relative to the correctness of the plaintiff's alleged facts." *Koch v. Rugg*, 221 F.3d 1283, 1294 (11th Cir. 2000) (citing *Johnson v. Jones*, 414 U.S. 304, 312 (1995); Fed. R. Civ. P. 56(c)). We address the remaining arguments in turn.

First, Rodriguez argues that the district court committed an error by invoking broadly defined, generalized principles of First Amendment rights instead of looking for cases more clearly on point. We disagree.

This Court's precedent clearly establishes the contours of the right at issue. Rodriguez has not attempted to justify his alleged conduct by reference to reasonable suspicion, probable cause, or any other law enforcement purpose. And it is clearly established that a police officer cannot harass or threaten unlawful arrest and citation

6

because of a person's protected speech. *See NAACP v. Button*, 371 U.S. 415, 433 (1963) ("The threat of sanctions may deter [the exercise of First Amendment freedoms] almost as potently as the actual application of sanctions."); *see also Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ("direct retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment"); *see also Bennett v. Hendrix*, 423 F.3d 1247, 1255-56 (11th. Cir. 2005) (collecting cases).

In *Bennett*, this Court held that police officers violated the First Amendment when they "followed, pulled over, cited, intimidated, or otherwise harassed the plaintiffs" because of their speech. *Id.* at 1254. Of course, the alleged conduct here is not as extensive in scope as it was in *Bennett*. There, the officers were accused of "a prolonged and organized campaign of harassment," which included an "attempt[] to obtain arrest warrants against the plaintiffs without probable cause." *Id.* Here, Abella alleges that Rodriguez threatened to arrest him twice, blocked his car, and followed him around town in an intimidating manner. But the differences between this case and *Bennett* are a matter of degree, not of kind. *Bennett* gives "fair and clear notice" to police officers that harassing and threatening a private citizen with unlawful arrest and citation for political speech is unconstitutional. *See generally Marsh v. Butler Cnty.*, 268 F.3d 1014, 1031 (11th Cir. 2001) (en banc) ("fair and clear notice to government officials is the cornerstone of qualified immunity"),

7

*abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). To succeed at trial, Abella will have to establish that Rodriguez's alleged conduct deterred or chilled his expression in violation of the First Amendment.

Second, the district court did not err in finding a genuine issue of material fact regarding the causation element of Abella's First Amendment retaliation claim. It is undisputed that Abella engaged in constitutionally protected speech and acts when he displayed a political sign and filed complaints against Rodriguez. The only question is whether Abella presented sufficient evidence that Rodriguez took the alleged actions because of Abella's speech. Rodriguez argues that the district court erred by "collapse[ing] the causation prong of the retaliation analysis into the adverse conduct prong" by merely restating the alleged adverse conduct. We disagree.

A district court's role at the summary judgment stage is to determine, viewing the facts in the light most favorable to the nonmoving party, whether a genuine issue of material fact exists. *Salvato*, 790 F.3d at 1292. As the district court emphasized, Abella testified that Rodriguez threatened him with citation and arrest if he did not remove a political sign from his vehicle on two occasions. On Abella's version of the facts, Rodriguez expressly linked his threats to the sign and had no probable cause to arrest or cite Abella on either occasion. Abella further alleged that Rodriguez followed him around town, blocked his vehicle, shouted at him, and made

8

hand gestures at him while Abella displayed a political sign on his truck and immediately after Abella had filed numerous grievances against Rodriguez. Abella's testimony would support a finding that his display of a political sign and filing of grievances caused Rodriguez's conduct. Therefore, the district court was correct in holding that the question of causation should be resolved by a jury.

## V.

For the foregoing reasons, we **AFFIRM** the district court's denial of summary judgment.